No. 65,747

In the Matter of MARY CATHERINE JACKSON, *Respondent.*

(814 P.2d 958)

Opinion filed July 12, 1991.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Mary Catherine Jackson* appeared pro se.

*Per Curiam*: Mary Catherine Jackson, respondent, contests the findings and recommendations of a disciplinary hearing panel that she be suspended from the practice of law for two years for violating Disciplinary Rule 6-101(A)(3) (1990 Kan. Ct. R. Annot. 188); Model Rules of Professional Conduct (MRPC) 1.3 (1990 Kan. Ct. R. Annot. 219), 1.4(a) and (b) (1990 Kan. Ct. R. Annot. 220), and 8.4(c) and (g) (1990 Kan. Ct. R. Annot. 290); and Supreme Court Rule 207 (1990 Kan. Ct. R. Annot. 141), by neglecting a legal matter, failing to keep a client informed, misrepresenting the status of a case to a client, and failing to cooperate with the disciplinary administrator. The panel also recommended that respondent's readmission to the practice of law after suspension be conditioned on proof there are no malpractice claims, either pending or unsatisfied, against her and upon a plan submitted by her providing specific details for the supervision of her legal practice. The formal complaint originally contained two counts. Count I was dismissed by the hearing panel. The disciplinary administrator does not contest that dismissal.

Count II arose out of an automobile accident which occurred on January 23, 1985, and injuries sustained by the complainant, Carolyn Griffin Clark, in that accident. The complainant retained the respondent to represent her in a personal injury action within one week after the accident. Jackson had an oral fee agreement with Clark that Jackson was to receive one-third of the total recovery.

Jackson filed suit on behalf of the client, Case No. 86-C-16-94, in the District Court of Wyandotte County, Kansas, in early 1986. The client's deposition was taken on July 2, 1987 by the

defendant in the personal injury case. Sometime after the client's deposition had been taken, Jackson notified her the case would be settled by the first part of 1988. After this conversation, the client made numerous unsuccessful attempts to obtain information from Jackson about the status of her case. The client never received any written correspondence from Jackson as to the status of her case after July 2, 1987. The last time the client talked to Jackson, Jackson told her that she had not been able to get the case set on the court docket.

On February 6, 1989, the disciplinary administrator received Carolyn Griffin Clark's complaint that there had been no action in her case since the deposition of July 1987 and that the respondent had failed to inform her of the status of the case. Roger W. McLean was assigned to investigate the complaint.

On March 14, 1989, McLean wrote Jackson and requested a detailed written response to the complainant's allegations by March 31, 1989. On April 24, 1989, McLean wrote Jackson that he had received no response to his March 14 letter and asked for a response by May 31, 1989. Also on April 24, Jackson sent a letter to McLean in response to his March 14 letter. The two letters crossed in the mail. Jackson failed to address the status of complainant's personal injury claim.

During a phone conversation on May 2, 1989, Jackson told McLean the case was filed in Division 8 of the Wyandotte County District Court. McLean wrote the respondent on May 31, 1989, stating that, contrary to what Jackson had told him over the phone on May 2, the court clerk was unable to find a case in which Jackson's client was the plaintiff. McLean again requested that Jackson let him know the status of complainant's case. McLean received no response from Jackson.

On October 26, 1989, McLean wrote Jackson and gave her until November 1, 1989, to answer his request. On October 31, 1989, Jackson wrote McLean requesting until November 3, 1989, to inquire of the district court regarding the matter, stating "[A]t which time I will hand-deliver a detailed response to your office." No such response was forthcoming. McLean waited until November 20, 1989, for a response. Because of Jackson's failure to respond, McLean notified the disciplinary administrator.

At the disciplinary hearing on July 19, 1990, Jackson admitted that she did not respond promptly to most of the inquiries from the investigator and that prior to May 4, 1988, the district court had granted summary judgment to the defendant in the personal injury case. Jackson attributed most of the problem with her handling of the case to confusion resulting from her attempt to add another defendant to her client's case. Her delay in responding to the investigator was caused by the time required to care for an ill child. At the hearing, Jackson did not know if the client's case was still pending in the district court or closed. Jackson testified that she had no legal malpractice insurance.

The hearing panel found respondent had violated the following:

DR 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him or her.

MRPC 1.3: A lawyer shall act with reasonable diligence and promptness in representing a client.

MRPC 1.4(a): A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

MRPC 1.4(b): A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MRPC 8.4(c): It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

MRPC 8.4(g): It is professional misconduct for a lawyer to engage in any other conduct that adversely affects the lawyer's fitness to practice law.

The panel also found respondent had violated Supreme Court Rule 207, which requires members of the state bar to assist and communicate to the disciplinary administrator any information he or she may have affecting investigations conducted by the disciplinary administrator.

Jackson contests from the findings and recommendations of the disciplinary hearing panel, claiming that (1) the findings of fact are not supported by the record; (2) she has been prejudiced as a result of references in the hearing panel report to post-hearing telephone conversations and events; and (3) the panel's recom-

mendation of a two-year suspension is unduly harsh under the circumstances of this case.

Jackson first contends that the record is devoid of clear and convincing evidence or authority for the panel's findings.

We disagree. The report of a hearing panel of the Board for Discipline of Attorneys, while advisory only, will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply supported by the evidence, where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. *In re Matney*, 241 Kan. 783, Syl. ¶ 8, 740 P.2d 598 (1987).

The evidence is uncontroverted that the automobile accident occurred on January 23, 1985. The personal injury case was filed by Jackson. Jackson's client's deposition was taken in 1987. Jackson told her client that the case would be settled by early 1988. Jackson admitted the last document she filed in the case was a notice of appeal filed on May 4, 1988. At the time of the disciplinary hearing, Jackson was not able to give the panel any definitive answer as to the status of the personal injury action. (Jackson failed to inform her client the district court had granted the defendant's motion for summary judgment prior to May 4, 1988.)

This alone is ample evidence to sustain the panel's findings. Respondent's contention is without merit.

Jackson next asserts she has been prejudiced by inclusion in the panel hearing report of statements or recitals not sworn to and not part of the record. Jackson does not identify with specificity to which portions of the panel hearing report she refers. She does, however, refer to the recitation in the panel report that she was permitted to file additional documentation after the hearing.

At the close of her testimony, Jackson requested permission to submit additional information to the hearing panel. The panel granted Jackson an additional ten days to submit any exhibits she felt relevant. The conversations and events to which Jackson objects occurred only because the panel agreed to consider additional submissions by respondent. Jackson's claim that she was prejudiced by the inclusion of the statements in the record is totally without merit.

Jackson's final claim is that the panel's recommendation of a two-year suspension is unduly harsh under the circumstances of this case. Jackson cites personal circumstances as the reason for her delay in responding to the investigator. Jackson notes she had had no prior disciplinary action taken against her and a two-year suspension generally is reserved for persons who have had prior instances of discipline, or numerous violations. Jackson cites no authority for her assertions.

In view of respondent's handling of the personal injury claim in this case and her actions during the investigation of this disciplinary complaint, we can understand why the panel recommended a two-year suspension. The respondent not only failed her client, she was not candid with the investigator, the hearing panel, or this court. However, a majority of this court believes that a two-year suspension would be harsh and that the respondent should be disciplined by public censure.

It Is THEREFORE BY THE COURT ORDERED that Mary Catherine Jackson is hereby disciplined by this court by public censure and she is hereby ordered to forthwith pay the cost of this proceeding.

It Is FURTHER ORDERED that this Order of Public Censure be published in the official Kansas Reports.

By order of this court this 12th day of July, 1991.

McFARLAND, J., dissenting in part and concurring in part: I concur with the majority's determinations as to the violations having occurred. I dissent from the discipline imposed. The violations are serious. Additionally, respondent appears to be overwhelmed by her professional responsibilities. Even at this late date, she is unable to state the legal status of the personal injury case, but simply wants to be left alone to resolve whatever problems there are in the case. It would appear there is nothing to resolve therein—the case is over and her injured client is out in the cold. The protection of respondent's present and future clients, in my opinion, requires more than public censure.

ABBOTT, J., dissenting: I would place respondent on supervised probation for a two-year period. Respondent, as a sole practitioner, needs someone she can turn to for advice, as well as someone who will monitor her case management to see that deadlines are met. We are not doing respondent a favor by re-

turning her to the same environment to "sink or swim" on her own.