No. 90,062

In the Matter of JAMES E. RUMSEY, *Respondent*.

(71 P.3d 1150)

Opinion filed July 11, 2003.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Jerry K. Levy*, of the Law Offices of Jerry K. Levy, P.A., of Lawrence, argued the cause, and *Katherine L. Kirk*, of the same firm, was with him on the brief for respondent, and *James E. Rumsey*, respondent, argued the cause pro se.

*Per Curiam*: James E. Rumsey has been practicing law for 30 years. On September 10, 2002, the Disciplinary Administrator filed a formal complaint against Rumsey stemming from two complaints, one made by Tracy Welsh-McAlexander and another made by Patricia and Preston Ransone. The factual background of each complaint will be summarized separately.

## Tracy Welsh-McAlexander

On March 19, 1997, Tracy Welsh hired Rumsey to facilitate a divorce between herself and her husband, Tom Welsh. Rumsey and Tracy entered into an Agreement for Representation in Civil Procedure (Agreement). At that time, Tracy paid Rumsey a retainer of $700 by writing him a check from her checking account. Rumsey deposited the entire retainer in his operating account rather than his trust account the next day.

When Tracy hired Rumsey, she had been living with her mother in Douglas County for approximately 8 months. Tracy had moved from the marital residence in Leavenworth County, leaving the couple's five children with her husband, Tom. Although Tracy did not reside with the children, she visited them every other weekend and every Tuesday and Thursday evenings. Immediately before hiring Rumsey, Tracy assumed residential custody of the children because their teachers reported that they were uncared for and the school had sent them home with head lice.

Tracy asked Rumsey to file the divorce action in Douglas County. However, without advising Tracy about the venue options, Rumsey told her that he could only file the action in Leavenworth County because the children had resided there for the previous 6 months. Rumsey further indicated that he knew the judge in Leavenworth County and implied that he had some persuasion over him. Although Tracy was concerned about the distance to Leavenworth County, she succumbed to Rumsey's authority as an attorney and agreed to file the divorce action in Leavenworth County.

Tracy and her husband incurred a substantial amount of debt during their marriage. When the divorce was filed, Tracy was working at a minimum wage job and her husband would not maintain consistent employment. Tracy's mother, Nell Trefz, financially supported Tracy by paying for her living expenses and giving her money from time to time, including the money for Rumsey's retainer.

Because of Tracy's financial condition, Rumsey recommended that she file for bankruptcy. Rumsey was concerned that Tracy would be unable to pay his bills and that any payments she made might be disputed by the bankruptcy trustee, so he asked Trefz to sign the Agreement and to pay all of his bills directly to him rather than through Tracy. Rumsey added a signature line to the Agreement for Trefz and submitted it to Tracy with a note requesting that it be returned immediately with Trefz' signature. Trefz refused to sign the Agreement but paid some of Rumsey's bills directly from her checking account.

During the course of Tracy's representation by Rumsey, she and Trefz paid Rumsey $8,144, including $2,772.60 for travel time and mileage to Leavenworth County. In addition, Tracy paid $1,530 to Dr. John Spiridigliozzi for a custody evaluation, $400 for a guardian ad litem, $160 for a mediator, and $1,930 for a bankruptcy attorney.

In April 1998, Tracy and Trefz ceased payment on Rumsey's bills. In July 1998, without withdrawing as Tracy's attorney, Rumsey filed a petition against Tracy and Trefz in the Douglas County District Court, seeking a judgment for $4,469.49 and prejudgment interest. Following a hearing, the district court granted Trefz' mo-

tion for summary judgment on the claim that Trefz was directly liable for Rumsey's bills as a contracting party. The district court sanctioned Rumsey and ordered him to pay $250 of Trefz' attorney fees pursuant to K.S.A. 2002 Supp. 60-211 for failing to make a factual investigation before filing the petition or for ignoring the facts discovered during his investigation.

Due to Tracy's bankruptcy, the remainder of the allegations in Rumsey's petition remain unresolved. At the time of the hearing before the Hearing Panel (Panel), the case was still pending in the Douglas County District Court. Rumsey told the Panel that he would dismiss the action as part of his probation plan. During his oral argument before this court, Rumsey stated that the lawsuit against Trefz had been dismissed.

For Tracy Welsh-McAlexander's complaint, the Disciplinary Administrator alleges that Rumsey violated Kansas Rules of Professional Conduct (KRPC) 1.1 (2002 Kan. Ct. R. Annot. 316) (competent representation); KRPC 1.15(a) and (d) (2002 Kan. Ct. R. Annot. 384) (safekeeping property); KRPC 3.1 (2002 Kan. Ct. R. Annot. 406) (meritorious claims and contentions); KRPC 3.3 (2002 Kan. Ct. R. Annot. 411) (candor toward a tribunal); and KRPC 8.4(a), (c), (d), and (g) (2002 Kan. Ct. R. Annot. 449) (misconduct). Rumsey stipulated to violating KRPC 1.15(a) and (d) and KRPC 8.4(a).

### Ransone Complaint

In September 1997, Patricia Ransone and her husband, Preston, met with Rumsey for about 2 hours to discuss workers compensation issues regarding an accident that Patricia had while working for Pizza Hut in February 1997. Patricia had fallen off a stool and struck her head on a concrete windowsill. She was taken to the hospital that day and given a prescription for headache medicine. Later that month, Patricia saw a neurologist, who prescribed Tylenol with codeine. A couple of months later, Patricia experienced a panic attack on her way to work and was unable to function. She did not return to work afterwards and began receiving long-term disability. The Ransones believed that Patricia's inability to function was related to her head injury in February 1997.

At the Ransones' initial consultation, Rumsey suggested that Patricia may have a workers compensation claim or a claim under the Americans with Disabilities Act. Because there was a possibility that Patricia's workers compensation claim would need to be filed in Missouri, Rumsey told the Ransones that he may have to associate with Missouri counsel. Rumsey, however, did not recommend that the Ransones contact or engage a Missouri attorney. Knowing that Patricia may have a workers compensation claim, Preston prepared a Kansas workers compensation notice and filed it with Pizza Hut before consulting with Rumsey. Rumsey, however, failed to file any workers compensation notices on Patricia's behalf either in Kansas or Missouri.

Although the Ransones did not enter into a written fee agreement with Rumsey at the meeting in September 1997, the Ransones expected Rumsey to write a letter to Patricia's psychiatrist, Dr. Whipple, and a neurologist, Dr. Morte, regarding evidence to connect her head injury to her ongoing mental disability. The Ransones provided medical release forms for both Dr. Whipple and Dr. Morte, a time line with important dates, and copies of 900 pages of documents, including every document Patricia received from Pizza Hut. Rumsey disputes the receipt of 900 pages of documents from the Ransones, claiming that his entire file consisted of a manila folder about ½-inch thick.

Rumsey wrote letters to Dr. Whipple and Dr. Morte on October 7, 1997. He received a report from Dr. Whipple in late January or early February 1998 but did not meet with the Ransones until the Ransones contacted him in May 1998. During the second meeting in May 1998, Rumsey did not prepare a fee agreement for the Ransones. Nevertheless, the Ransones believed that Rumsey was working on the case because he had all of the documents that they had provided neatly bound on his desk.

The Ransones did not have contact again with Rumsey until May 1999, after they had received a letter from Patricia's long-term disability insurance company stating that her benefits would be stopped. At the May 1999 meeting, Rumsey told the Ransones that he would write a letter informing them of how he was going to

proceed with the case. Rumsey did not present the Ransones with a written fee agreement at that time.

Contrary to his promise, Rumsey did not send the Ransones a letter outlining his strategy for the case. Rumsey did not have further contact with the Ransones until August 1999, when Patricia called Rumsey to tell him that her new doctor had found a causal connection between her head injury and her mental disability. Rumsey acknowledged the importance of the new information, indicating to the Ransones that he was still pursuing the matter.

Rumsey and the Ransones disagree about whether there was a meeting at his office in August 1999. Rumsey testified that he met with the Ransones in his office on August 19, 1999, and gave them an original fee agreement for their signatures. Preston, however, testified that there was no meeting in August 1999, and that he and Patricia did not receive a fee agreement to sign until November 1999.

In September 1999, Patricia received a letter from the benefits company regarding the termination of her long-term disability benefits. At that time, Patricia still had not received the strategy letter that Rumsey had promised in May 1999, and she had not heard anything from Rumsey regarding her new doctor's causation opinion.

Patricia received a letter from Tricon, the owner of Pizza Hut, dated November 9, 1999, indicating that her employment had been terminated in May 1999. On November 11, 1999, Preston wrote a letter to Rumsey expressing his concern over Rumsey's inaction on Patricia's case, informing him that Patricia's employment had been terminated, outlining his assumptions regarding the contingency fee schedule, and requesting a response by November 19, 1999. Rumsey responded by letter on November 15, 1999, and requested $750 to investigate the remedies available. Rumsey enclosed a fee agreement and requested that the Ransones make an appointment to help him go over the documents by putting them in chronological order.

In March 2000, the Ransones met with an attorney from the Judge Advocate General (JAG), who informed them that the statute of limitations had run on Patricia's workers compensation case.

The JAG lawyer advised the Ransones to get another lawyer and to pursue a malpractice action against Rumsey.

Before the Panel, Rumsey testified that he thought the Ransones had lost interest in the case because of the time passage between contacts. Preston Ransone, however, testified that Rumsey told them to be patient because the matter would take a long time to resolve. Rumsey further testified that based upon Dr. Whipple's report, Patricia did not have a cause of action and that he had informed her of such when he saw her in church in the spring of 1998. The subsequent contacts by the Ransones in May 1998, May 1999, and August 1999, however, indicate that the Ransones were not aware of Rumsey's opinion that Patricia did not have a cause of action.

For the Ransones' complaint, the Disciplinary Administrator alleges that Rumsey violated KRPC 1.1 (competence); KRPC 1.3 (2002 Kan. Ct. R. Annot. 328) (diligence); KRPC 1.4 (2002 Kan. Ct. R. Annot. 340) (communication); KRPC 1.5(b) and (d) (2002 Kan. Ct. R. Annot. 352) (fees); KRPC 1.16 (2002 Kan. Ct. R. Annot. 395) (declining or terminating representation); and KRPC 8.4(a) and (g) (misconduct). Rumsey stipulated to the violations of KRPC 1.3, KRPC 1.4, KRPC 1.5(b), KRPC 1.16(d), and KRPC 8.4(g).

The Panel unanimously concluded that Rumsey violated KRPC 1.3, KRPC 1.4(a), KRPC 1.5(b), KRPC 1.15(a) and(d), KRPC 1.16(d), and KRPC 8.4(a), with the violations for KRPC 1.16(d) and KRPC 8.4(a) occurring in both the Welsh-McAlexander and the Ransone complaints. The majority of the Panel also concluded that Rumsey violated KRPC 3.3(a)(1) (2002 Kan. Ct. R. Annot. 411) by making false and misleading statements in his petition against Tracy Welsh McAlexander and Nell Trefz.

The Panel unanimously found the following aggravating factors: five prior disciplinary offenses (in 1977, 1994, 1999, 2000, and 2001), multiple offenses, vulnerable victims, and substantial experience in practicing law. Additionally, the majority of the Panel found that Rumsey acted with a dishonest or selfish motive when he insisted on filing Tracy's divorce action in Leavenworth County rather than Douglas County.

The Panel further found the following mitigating factors: personal or emotional problems related to his wife's chemotherapy treatment, Rumsey's past and present attitude of cooperation and willingness to acknowledge his errors by stipulating to most of the violations, the nearly 3-year delay in filing the complaint, the imposition of court sanctions in the action against Trefz, and the remoteness of one of his prior offenses in 1977.

The Disciplinary Administrator requested that the Panel recommend an indefinite suspension from the practice of law. However, the Disciplinary Administrator's recommendation before this court is a 1-year suspension with a Supreme Court Rule 219 (2002 Kan. Ct. R. Annot. 289) hearing before his license can be reinstated.

Rumsey, on the other hand, requests a published censure or, in the alternative, a 1-year period of supervised probation as a sanction for his stipulated violations. Rumsey submitted a probation plan via facsimile to the Disciplinary Administrator's office 4 days before his panel hearing. Rumsey's probation plan requires him to refrain from practicing workers compensation and Americans with Disabilities law. It further designates Charles Branson, a 33-year-old attorney who has been practicing law for only 6 years, as his supervising attorney.

The Panel did not agree on a disciplinary recommendation. Sharon A. Werner, who concluded that Rumsey did not violate KRPC 3.3 and did not find a selfish motive as an aggravating factor, recommends public censure. Warren R. Southard recommends public censure if Rumsey dismisses his lawsuit against Tracy and Trefz but recommends a 1-year suspension if he does not dismiss the suit. Philip D. Ridenour, the Panel's presiding officer, filed a separate, dissenting opinion, recommending a 1-year suspension with a Rule 219 hearing before Rumsey's license is reinstated.

In his separate dissenting opinion, Philip D. Ridenour concluded that Rumsey violated KRPC 1.1 (competence) as alleged in the formal complaint but not found by the majority of the Panel and two other rules in addition to those alleged in the formal complaint. Ridenour specifically found by clear and convincing evidence that Rumsey violated KRPC 1.8(f)(2) (2002 Kan. Ct. R. Annot. 366)

(interference of lawyer's judgment by person paying legal fees), and KRPC 5.4(c) (2002 Kan. Ct. R. Annot. 433) (allowing payor of fees to direct lawyer's professional judgment in rendering legal services to client).

Ridenour concluded that Rumsey violated KRPC 1.1 by failing to protect any potential workers compensation claim for Patricia Ransone in either Kansas or Missouri by ensuring that the proper notification was filed or by contacting Missouri counsel. Timothy Alvarez, a workers compensation expert who appeared on behalf of the Disciplinary Administrator, testified that Rumsey violated KRPC 1.1 (competence) when he did nothing to protect either the Kansas or Missouri workers compensation claims.

The violations of KRPC 1.8(f)(2) and KRPC 5.4(c) stem from Rumsey's testimony.

"So they had—they, Tracy and her mom, had the decision to make, do you want to appeal or do you want to try and see if we can come up with some kind of grounds of a material change in circumstances. Mrs. Trefz vetoed the appeal because she didn't want to pay for it. And Tracy certainly wasn't in a position to pay for it.

"So then the next thing was, what about the possibility of filing some kind of motion to modify because Nell was then willing to pay for that."

In addition, Rumsey testified that his bankruptcy advice benefitted Trefz as one of Tracy's creditors. At a joint meeting including Rumsey, the bankruptcy attorney, Tracy, and Trefz, Rumsey advised Tracy not to file for bankruptcy because the loans from Trefz would be discharged, leaving no way for Trefz to be reimbursed. Trefz also directed Rumsey's actions by authorizing the transfer of funds from his trust account to pay part of his fees.

Based on this evidence, Ridenour found that

"Mr. Rumsey allowed Mrs. Trefz, a person who was not his client, to direct his judgment and to interfere with his professional independence and judgment which he should have exercised on his client's behalf. Mr. Rumsey, as shown by his testimony, was so driven by his concern over how he would be paid his attorneys fees that he allowed his client's mother, who was paying his fees, to dictate how he handled the case for his client."

Rumsey filed exceptions to the Panel's final report and a brief arguing the matter to this court. The matter is before this court for a final determination regarding Rumsey's discipline.

In his brief, Rumsey first questions the evidence regarding his violation of KRPC 3.3. The majority of the Panel concluded that Rumsey violated KRPC 3.3(a)(1) by including false and misleading statements in his petition against Tracy Welsh-McAlexander and Nell Trefz. Pursuant to Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260), a finding of misconduct must be established by clear and convincing evidence. Rumsey argues that the panel's conclusion that he violated KRPC 3.3(a)(1) is not supported by clear and convincing evidence.

Although advisory, the hearing panel's report is given the same dignity as a special verdict by a jury or the findings of a trial court and will be adopted when amply supported by the evidence, when it is not against the clear weight of the evidence, or when the evidence consists of sharply conflicting testimony. *In re Jackson*, 249 Kan. 172, 175, 814 P.2d 958 (1991).

KRPC 3.3(a) provides: "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal."

The undisputed language in the petition against Tracy and Trefz provides:

"2. Defendant, Tracy S. Welsh, n/k/a Tracy S. McAlexander, and her mother, Defendant Nell Trefz, engaged Plaintiff on March 19, 1997, to represent Tracy S. Welsh in a divorce proceeding against her then spouse . . . .

. . . .

"4. At the time of the parties' agreement and throughout Plaintiff's representation of Tracy S. Welsch [*sic*], Defendant Nell Trefz stated that she would pay Defendant Welsh's attorney fees.

. . . .

"6. The initial retainer to represent Defendant Tracy S. Welsh was paid by Defendant Nell Trefz.

"7. Throughout Plaintiff's representation of Defendant Tracy S. Welsh, n/k/a Tracy S. McAlexander, when periodic billings of Plaintiff's attorney's fees have been sent to Defendant Tracy S. Welsh, all payments of Plaintiff's fees have been made by Defendant Nell Trefz."

The Douglas County District Court granted Trefz' motion for summary judgment regarding her direct liability for Tracy's legal fees, stating:

"(a) *Did Trefz retain Rumsey to represent her daughter?*

"McAlexander called Rumsey's office to make an appointment. She met with Rumsey. She signed the 'Agreement for Representation in Civil Procedure' that Rumsey had prepared. Trefz was not present at that meeting, nor did she ever sign the Agreement. The only parties to the Agreement were Rumsey and McAlexander. McAlexander wrote Rumsey a check for $700.00 on her personal checking account. The Agreement references the fact that McAlexander, as client, had paid the retainer to Rumsey. There is no evidence that Trefz was involved in the selection or retaining of Rumsey as McAlexander's attorney. She had no contact with Rumsey on March 19, 1997, the date he was retained by McAlexander, nor at any time prior to McAlexander's initial meeting with him for any reason related to her daughter's divorce. The only evidence is that Trefz provided money to her daughter to enable **her** to retain an attorney. She retained Mr. Rumsey. This does not obligate Trefz to make future payments nor support the contention in plaintiff's Petition that 'defendant, Tracy S. Welsh, now known as Tracy S. McAlexander, and her mother, defendant Nell Trefz, engaged plaintiff on March 19, 1997, to represent Tracy S. Welsh in a divorce proceeding against her then spouse . . . .'

"Defendant's Motion for Summary Judgment as to this issue is granted."

In response to Trefz' request for sanctions, the Douglas County District Court stated:

"In paragraph 2 of his Petition, Rumsey alleges that 'defendant, Tracy S. Welsh, n/k/a Tracy S. McAlexander, and her mother, defendant Nell Trefz, engaged plaintiff on March 19, 1997, to represent Tracy S. Welsh in a divorce proceeding against her spouse . . . .' In fact, it is undisputed that Trefz was not at the meeting and there is no evidence that she retained Rumsey as attorney for her daughter.

"Rumsey states in paragraph 6 of his Petition that 'The initial retainer to represent defendant Tracy S. Welsh was paid by defendant Nell Trefz.' In fact, it is undisputed that Trefz was not at the meeting and did not pay the retainer. The check was written by McAlexander on her checking account.

"The allegations included in the Petition at paragraphs 2 and 6 have no evidentiary support. Mr. Rumsey is a licensed attorney. He is representing himself in this action. Accordingly, in drafting the Petition he did not have to rely on the truthfulness of statements made to him by a third-party client. He has the benefit of his own memory and his own file, making the 'reasonable inquiry' required by statute and the Model Rules of Professional Conduct a simple matter. Either Rumsey did not make the investigation before drafting and signing his Petition or he ignored the facts discovered during that investigation. In either event he knew or should have known that the allegations lacked evidentiary support. These are the allegations upon which Rumsey based his claim that Trefz has primary responsibility for his fees. Trefz was forced to defend these allegations and is entitled to reimbursement of attorney's fees she incurred in presenting her defense. Plaintiff is ordered to pay $250.00 to Trefz as reasonable attorney fees."

Pursuant to Supreme Court Rule 202 (2002 Kan. Ct. R. Annot. 221-22), all civil judgments are prima facie evidence of the findings made in the judgment and "shall raise a presumption as to their validity." The respondent bears the burden of disproving the findings in the civil judgment. Thus, Rumsey bears the burden of establishing that the findings made by the Douglas County District Court are invalid.

Contrary to paragraph 2 in Rumsey's petition, it is uncontroverted that Trefz was not present when Tracy first met with and retained Rumsey by entering into an employment contract on March 19, 1997. It is further uncontroverted that Trefz did not sign Rumsey's employment contract with Tracy, even though Rumsey added a signature line for Trefz' signature at a later date. Consequently, Trefz could not have agreed to pay Rumsey's fees at the time of the agreement. Likewise, Trefz did not engage Rumsey to represent Tracy on March 19, 1997, as alleged in paragraph 2 of Rumsey's petition.

It is also uncontroverted that Tracy wrote a $700 check for Rumsey's retainer from her own personal checking account and that she had received the funds to cover that check from Trefz. Rumsey argues that the fees were paid by Trefz even though the payment was made indirectly through Tracy's account because Tracy had been instructed to use the funds to hire him as her attorney. This argument overlooks the testimony from both Tracy and Trefz that the money given to Tracy had no strings attached and that Tracy could have used the money in the manner she chose.

Rumsey has failed to point to any evidence that contradicts the Douglas County District Court's findings. Accordingly, those findings are presumptively valid and provide clear and convincing evidence that Rumsey violated KRPC 3.3(a)(1).

Next, Rumsey argues that the majority of the Panel erred when it found that he acted with a selfish or dishonest motive as an aggravating factor. A majority of the Panel found that Rumsey filed Tracy's divorce in Leavenworth County for the purpose of increasing the costs associated with the litigation and concluded that Rumsey's misconduct was motivated, in part, by selfishness. Rumsey

argues that there is overwhelming evidence to support his actions in advising and choosing a forum.

Although advisory, the Panel's findings are given the same deference as a jury's special verdict or a trial court's findings of fact. When the evidence is sharply conflicting, this court adopts the Panel's findings. *Jackson*, 249 Kan. at 175. The Panel's findings turn on the credibility of the witnesses. As the trier of fact, the Panel, like the jury or the judge in a bench trial, had the opportunity to observe the witnesses and evaluate their demeanor. When reviewing a jury's verdict, this court does not weigh the evidence or pass on the credibility of witnesses. *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 633, 1 P.3d 891 (2000). Instead, we consider the evidence and all reasonable inferences drawn therefrom in a light most favorable to the prevailing party. 268 Kan. at 633. When reviewing a trial court's factual findings, we must determine whether the findings are supported by substantial competent evidence, but we do not weigh conflicting evidence or pass on the credibility of witnesses. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 386-87, 22 P.3d 124 (2001).

The evidence regarding Rumsey's advice for the venue of Tracy's divorce action is sharply conflicting. Rumsey testified that Tracy wanted advice about where to file the divorce action. Tracy, on the other hand, testified that she instructed Rumsey to file the divorce in Douglas County because it was closer to her work and her home, but Rumsey told her the only choice was Leavenworth County. Rumsey testified that he advised Tracy to file the divorce in Leavenworth County because he was concerned that Judge Shepherd in Douglas County would not grant temporary custody to Tracy and that a child in need of care action would be filed. Tracy, however, testified that Rumsey advised her to file the action in Leavenworth County because the children had previously resided there and because he knew the judge and could influence him. When asked if Rumsey explained the choice of venue to her, Tracy replied: "Mr. Rumsey doesn't like to explain anything. He kind of tells you this is the way it's going to be and this is the way it's going to be."

It is uncontroverted that filing the action in Leavenworth County cost Tracy $2,772.60 for travel expenses. Tracy testified to that amount, and Rumsey did not dispute the amount.

Rumsey has failed to establish any reason for discrediting the Panel's findings. The sheer fact that the respondent denies the factual allegations does not invalidate a finding of misconduct based on clear and convincing evidence. *In re Berg*, 264 Kan. 254, 276, 955 P.2d 1240 (1998). Here, the findings indicate that the Panel gave more credibility to Tracy's testimony than to Rumsey's. With only a cold record before us, we cannot reweigh the evidence or reevaluate the witnesses' credibility. Giving the Panel's findings the proper deference, we find that there is clear and convincing evidence in the record to support the Panel's conclusion that Rumsey was motivated by selfishness.

When considering disciplinary matters, we have a duty to examine the evidence and determine for ourselves the judgment to be entered. *In re Berg*, 264 Kan. at 269. Accordingly, this court may find violations sua sponte when there is clear and convincing evidence in the record to support that conclusion. See 264 Kan. at 274-76. "[E]vidence is convincing 'if it is reasonable and persuasive enough to cause the trier of facts to believe it.' " 264 Kan. at 277 (quoting *Ortega v. IBP*, 255 Kan. 513, Syl. ¶ 2, 874 P.2d 1188 [1994]).

In reviewing this case, we take note of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 38-1336 *et seq.*, which establishes when Kansas courts have jurisdiction to enter orders relating to children. K.S.A. 38-1348(a)(1) provides that Kansas courts have jurisdiction to enter an initial child custody determination when the child has resided in Kansas for the 6 months preceding the filing of the action. The UCCJEA addresses jurisdiction for Kansas courts. It does not address the determination of venue between the state's district courts. In advising Tracy that the divorce must be filed in Leavenworth County, Rumsey incorrectly applied the UCCJEA and misled Tracy regarding Kansas law. As a result, this court concludes that Rumsey violated KRPC 1.1 (competence) as alleged by the Disciplinary Adminis-

trator's formal complaint, when he informed Tracy that she had to file the divorce in Leavenworth County.

We are further persuaded by Chairman Ridenour's dissent to the final hearing report, which finds additional violations of the KRPC. In addition to our determination that Rumsey violated KRPC 1.1 in his representation of Tracy Welsh-McAlexander, we conclude that he violated KRPC 1.1 in his representation of Patricia Ransone when he failed to protect either the Kansas or Missouri workers compensation claims. We also conclude that the record contains clear and convincing evidence to establish that Rumsey violated KRPC 1.8(f) and KRPC 5.4(c) when he allowed Tracy's mother to direct or regulate his independent professional judgment regarding Tracy's divorce action.

In summary, we conclude that Rumsey's conduct in these two complaints establishes 14 violations of the KRPC, including multiple violations of the same rule: KRPC 1.1—Welsh; KRPC 1.1—Ransone; KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15(a) and (d), KRPC 1.16(d)—Welsh; KRPC 1.16(d)—Ransone; KRPC 3.3(a)(1), KRPC 1.8(f)(2), KRPC 5.4(c), KRPC 8.4(a)—Welsh; KRPC 8.4(a)—Ransone.

We turn now to the issue of determining the appropriate discipline. We are not bound by the recommendations made by the Disciplinary Administrator or the Panel. Rule 212(f) (2002 Kan. Ct. R. Annot. 266); *In re Bailey*, 268 Kan. 63, 64, 986 P.2d 1077 (1999). In disciplinary proceedings, this court has a duty to examine all the evidence and to determine the judgment to be issued. 268 Kan. at 64. To determine the appropriate discipline we must evaluate the nature of the duty violated, the attorney's mental state, the potential or actual injury caused by the misconduct, and the existence of aggravating or mitigating factors. ABA Compendium of Professional Responsibility, (ABA Standards for Imposing Lawyer Sanctions § 3.0) (2003) (hereinafter ABA Standards). The discipline must be based on the specific facts and circumstances of each case, so other disciplinary actions provide little guidance. 268 Kan. at 64-65. Historically, we have applied the ABA Standards for Imposing Lawyers Sanctions as a guide for determining the appropriate discipline. See, *e.g.*, *In re Wagle*, 275 Kan. 63, 75-76, 60

P.3d 920 (2003); *In re Kellogg*, 274 Kan. 281, 292, 50 P.3d 57, 65-66 (2002); *In re Wall*, 272 Kan. 1298, 1308-11, 38 P.3d 640 (2002); *Bailey*, 268 Kan. at 65; Internal Operating Rules of the Kansas Board for Discipline of Attorneys, E.3 (2002 Kan. Ct. R. Annot. 307).

The violation of KRPC 1.1, competence, breaches an attorney's duty to his client. ABA Standard § 4.52 provides: "Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client."

Rumsey knowingly engaged in practicing workers compensation law, an area of law that he admittedly had not practiced much. Rumsey's unassisted venture into the practice of both Kansas and Missouri workers compensation law and Americans with Disabilities (ADA) law injured Patricia Ransone by preventing her from raising any potential claim before the statute of limitations passed. This violation falls within the parameters of ABA Standard § 4.52.

Rumsey further violated KRPC 1.1 in his representation of Tracy Welsh-McAlexander when he misrepresented the application of the UCCJEA for determining the forum for Tracy's divorce. ABA Standard § 4.61 provides: "Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client."

Rumsey admits that domestic law is a significant portion of his practice. The testimony regarding his advice to Tracy about the venue for her divorce is sharply conflicting. The Panel found Tracy's testimony more credible and determined that Rumsey acted with a selfish motive by filing the divorce action in Leavenworth County. The Panel's finding leads us to conclude that Rumsey knowingly misapplied the UCCJEA and deceived Tracy about its application to benefit himself with increased fees. Rumsey's knowing deception cost Tracy an uncontroverted $2,772.60, which is a significant amount of money to a person in bankruptcy. These facts implicate the sanctions set forth in ABA Standard § 4.61.

Rumsey stipulated to the violation of KRPC 1.3 (diligence) and KRPC 1.4 (communication). Both of these violations demonstrate

a breach of Rumsey's duty to his client. ABA Standard § 4.41 provides:

"Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

Rumsey's violation of KRPC 1.3 and KRPC 1.4 fall within the conduct set forth in ABA Standards § 4.41(b) and (c). Rumsey knowingly failed to perform services for Patricia Ransone when he failed to provide the strategy letter that he promised her in May 1999. His failure to diligently pursue Patricia's workers compensation claims in both Missouri and Kansas caused her to lose any potential cause of action and monetary recovery for her injury. Patricia's inability to pursue a cause of action and recover monetary damages is a serious or potentially serious injury. Likewise, Rumsey's failure to maintain contact with the Ransones after accepting the responsibility to pursue Patricia's case constitutes a pattern of neglect over a period of 2 years that caused a serious or potentially serious injury to Patricia.

Rumsey's next violation is KRPC 1.5(b) (fees). He stipulated to the violation of this rule. ABA Standard § 4.63 provides: "Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client."

Rumsey negligently failed to provide the Ransones with complete information regarding his fees by failing to provide them with a written fee agreement before November 1999, when he provided an agreement stating that he would investigate the possible remedies for a $750 fee. The Ransones were injured by Rumsey's negligence because they believed that Rumsey was investigating Patricia's claims on a contingency basis and were surprised 2 years later to learn that he would not investigate the claims without payment of an investigation fee or a written fee agreement.

Next, Rumsey stipulated to the violation of KRPC 1.15(a) and (d) (safekeeping property). ABA Standard § 4.14 provides: "Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client."

Rumsey testified that he inadvertently deposited Tracy's retainer in his operating account rather than his trust account. His inadvertence demonstrates negligence in dealing with Tracy's retainer. Tracy, however, was not actually injured by the negligence. Thus, ABA Standard § 4.14 applies.

Rumsey further stipulated to the violation of KRPC 1.16(d) (termination of representation) in regard to the Ransones, and we found that he violated the rule regarding Tracy Welsh-McAlexander as well. ABA Standard § 7.2 applies to the facts in this case. It provides: "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

Rumsey admitted that he never informed the Ransones in writing that Patricia did not have a case. Based on the Ransones' continuing contact with Rumsey from September 1997 through November 1999, it is reasonable to infer that they believed Rumsey continued to represent Patricia and were unaware of Rumsey's opinion that Patricia had no legal claims. It is also reasonable to infer that Rumsey was aware of the Ransones' belief that he continued to represent Patricia. Thus, Rumsey knowingly violated his duty to the Ransones to inform them of his legal opinion regarding Patricia's claims and to withdraw from representing Patricia so that she could seek other counsel. To make matters worse, Rumsey admitted that he did not inform the Ransones of the nearly expired statute of limitations when he finally sent them a written fee agreement in November 1999. Because Rumsey failed to communicate his opinion of Patricia's claims and terminate his representation, the Ransones waited for Rumsey to proceed while the statute of limitations expired, causing injury or potential injury to Patricia.

The same Standard applies to Rumsey's violation of KRPC 1.16(d) in regard to Tracy Welsh-McAlexander. Rumsey filed the

petition against Tracy knowing that he had not withdrawn from representing her. Although there was no actual activity in the Welsh divorce until Tracy hired new counsel, Rumsey remained Tracy's attorney of record, making him the required recipient of any new pleadings. This conflict of interest caused potential damage to Tracy.

In addition to Rumsey's stipulated violations, the majority of the Panel and this court have concluded that he violated KRPC 3.3(a)(1). ABA Standard § 6.12 applies for assessing sanctions for the violation of this rule and provides:

"Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

In her memorandum opinion, Judge Martin concluded that Rumsey "knew or should have known that the allegations lacked evidentiary support" and granted an award of attorney fees for Trefz, who was a party to the lawsuit. We find no reason to question Judge Martin's conclusions. Rumsey's violation of KRPC 3.3 demonstrates a violation of his most primary duty to the court, which he assumed before he ever had a client. " 'Our court system depends on members of the bar advancing the truth in submissions to the court. No breach of this professional duty is more detrimental to the administration of justice.' " *In re Wagle*, 275 Kan. at 76 (quoting *In re Roy*, 261 Kan. 999, 1004, 933 P.2d 662 [1997] [Six, J., dissenting]).

Finally, we have concluded that Rumsey violated KRPC 1.8(f)(2) and KRPC 5.4(c) when he allowed Trefz, as the payor of his fees, to influence his independent professional judgment in his representation of Tracy Welsh-McAlexander. The ABA Standards address this violation in Standard § 4.33, which states:

"Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client."

Rumsey negligently violated KRPC 1.8(f)(2) and KRPC 5.4(c) when he allowed his concern about payment to overshadow his professional judgment. In doing so, he caused potential harm to Tracy by affecting her ability to discharge debt in bankruptcy. He caused further potential harm to Tracy when he allowed Trefz' input to limit Tracy's options for addressing the district court's custody order.

In addition to considering the appropriate sanction for each individual rule violation, we must also consider any aggravating and mitigating circumstances as outlined by ABA Standards §§ 9.2 and 9.3. See ABA Standard § 3.0. The Panel found the following aggravating circumstances:

Prior disciplinary offenses: Rumsey has been disciplined by informal admonishment on five prior occasions, including:
1977 - violation of current KRPC 3.5(d) (2002 Kan. Ct. R. Annot. 419) (engaging in undignified or discourteous conduct that is degrading to a tribunal). Rumsey called the complainant a "son of a bitch" and made other inappropriate comments during closing arguments.

1994 - violation of KRPC 3.3 (candor to the tribunal).

1999 - violation of KRPC 8.4(g) (exhibiting conduct adversely reflecting on his fitness as a lawyer to practice).

2000 - violation of KRPC 1.15 and Supreme Court Rule 207 (2002 Kan. Ct. R. Annot. 247) (failing to maintain and provide adequate trust accounting and failing to cooperate with the disciplinary investigation).

2001 - violation of KRPC 1.9 (2002 Kan. Ct. R. Annot. 370) (conflict of interest with a former client) and KRPC 1.16 (2002 Kan. Ct. R. Annot. 395) (declining or terminating representation).

Dishonest or selfish motive:-Rumsey acted with a selfish motive when he filed Tracy Welsh-McAlexander's divorce action in Leavenworth to unnecessarily increase his legal fees.

Multiple offenses: Rumsey is being disciplined for 14 violations of the KRPC.

Vulnerability of the victims: Tracy Welsh-McAlexander was an unemployed mother of 5 children with little financial stability and

little work experience when she hired Rumsey to file her divorce. Patricia Ransone had suffered a head injury and a mental breakdown before she sought representation by Rumsey. In fact, Patricia Ransone was so emotionally distraught at the hearing that she could not testify. Rumsey was fully aware of the circumstances for each client when he engaged in misconduct against them.

Substantial experience in the practice of law: Rumsey was admitted to the practice of law in 1972. He had been practicing law for 25 years when he committed the misconduct in this case.

The Panel found the following mitigating circumstances:

Personal or emotional problems if such misfortunes have contributed to the violation of the Model Rules of Professional Conduct: Rumsey's wife began receiving chemotherapy treatment at about the same time as he began representing Tracy Welsh-McAlexander in March 1997.

Present and past attitude of the attorney as shown by his or her cooperation during the hearing and his or her full acknowledgment of the transgressions: Although Rumsey did not comply with Supreme Court Rule 211 by answering the complaint within 20 days and failing to request additional time for filing an answer, the Panel concluded that Rumsey had cooperated with the proceedings because he stipulated to most of the violations.

Delay in disciplinary proceedings: The formal complaint was filed 3 years after the misconduct.

Imposition of other penalties or sanctions: The Douglas County District court assessed attorney fees of $250 against Rumsey as a sanction for filing false pleadings.

Remoteness of prior offenses: The 1977 admonition is remote to the current offenses in both time and nature.

Rumsey proposes to this court that he be disciplined with a published censure but, pursuant to the Disciplinary Administrator's request, prepared a probation plan for the Panel's consideration. Probation is recommended

"only in exceptional cases with persuasive mitigating factors. Probation should never be recommended unless a substantial and detailed plan of probation containing adequate safeguards to protect the public and to ensure respondent's full compliance with the disciplinary rules and the orders of the Court has been timely

initiated and presented to the hearing panel by the respondent." Internal Operating Rules of the Kansas Board for Discipline of Attorneys, E.8 (2002 Kan. Ct. R. Annot. 308).

This case does not present exceptional circumstances with persuasive mitigating factors. Rumsey's lengthy experience as an attorney and his repeated violations of the same professional rules belie his contention that these violations are a one-time occurrence related to the stress of his wife's illness. Rumsey's plan proposes that a young attorney with only 6 years of experience supervise him. We conclude that Rumsey is not a candidate for supervision by a far less experienced attorney.

Furthermore, Rumsey's plan has not been timely initiated or presented to the Panel for consideration. By his own testimony, Rumsey did not prepare a probation plan until directed to do so by the Panel in preparation for his hearing. The plan was faxed to the Panel members after 5:00 p.m. on the Friday before his hearing began the following Tuesday. Rumsey apparently did not believe the probation plan to be necessary because he had taken no steps to implement the plan and testified that he thought his improprieties did not warrant suspension.

The Panel concluded that Rumsey's probation plan is not appropriate under the circumstances and is unworkable. We agree.

Considering the appropriate ABA Standard for each individual rule violation and the aggravating and mitigating circumstances, we conclude that the appropriate discipline is a 1-year suspension. Rumsey will not be permitted to apply for reinstatement pursuant to Rule 219 (2002 Kan. Ct. R. Annot. 289) until the 1-year suspension has passed.

We are particularly concerned about Rumsey's baffling inability to comprehend and follow the KRPC Rules or his shocking indifference to them as shown by his repeated violations. After five prior admonitions and 25 years of practice, one would think that Rumsey could figure out how to operate within the KRPC. On the contrary, Rumsey has demonstrated his inability or indifference by not only repeating his violations, but by escalating, rather than diminishing, the number of violations. We agree with Chairman Ridenour when he stated that Rumsey is a "loose cannon" who "alternately ignores

and then pushes around his clients, commingles clients' funds with his own, and fails to advise clients when he has terminated his representation of them." We believe that any form of discipline short of a suspension would be as ineffective as the previous discipline Rumsey has received.

IT IS THEREFORE ORDERED that James E. Rumsey be and he is hereby suspended from the practice of law in the state of Kansas for a period of 1 year, commencing as of the date of this order.

IT IS FURTHER ORDERED that James E. Rumsey shall comply with Supreme Court Rule 218 (2002 Kan. Ct. R. Annot. 279).

IT IS FURTHER ORDERED that James E. Rumsey shall be eligible to apply for reinstatement after 1 year and that he be subject to reinstatement requirements, including a hearing as provided by Supreme Court Rule 219.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.