No. 93,550

In the Matter of JAMES D. WENGER, *Respondent*.

112 P.3d 199

Opinion filed June 3, 2005.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the brief for the petitioner.

*James D. Wenger*, respondent, argued the cause and was on the brief pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the Disciplinary Administrator's office against James D. Wenger, of Clay Center, an attorney admitted to the practice of law in Kansas.

The formal complaint filed against the respondent alleges violations of Kansas Rules of Professional Conduct (KRPC) 1.1 (2004 Kan. Ct. R. Annot. 342) (competence); KRPC 1.2 (2004 Kan. Ct. R. Annot. 350) (scope of representation); KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence); KRPC 1.4 (2004 Kan. Ct. R. Annot. 367) (communication); KRPC 1.16 (2004 Kan. Ct. R. Annot. 426) (declining or terminating representation); KRPC 3.2 (2004 Kan. Ct. R. Annot. 440) (expediting litigation); KRPC 8.1 (2004 Kan. Ct. R. Annot. 480) (bar admission and disciplinary matters); Supreme Court Rule 207 (2004 Kan. Ct. R. Annot. 261) and Supreme Court Rule 211 (2004 Kan. Ct. R. Annot. 275).

A disciplinary panel of the Kansas Board for the Discipline of Attorneys conducted a formal hearing, as required by Kansas Supreme Court Rule 211. The respondent failed to appear. The panel entered the following findings of fact, conclusions of law, and recommendation to this court:

### "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1. James D. Wenger (hereinafter 'the Respondent') is an attorney at law . . . . The Respondent was admitted to the practice of law in the state of Kansas on December 19, 1996."

*"Complaint of Dennis L. Green*

"2. In April, 2002, Dennis L. Green retained the Respondent to obtain a divorce from his common law wife, Lorraine J. Green, and paid a retainer of $1,100.00 to the Respondent. Mr. Green is an over-the-road truck driver. Additionally, Mr. Green is a member of the Kansas National Guard. It was important to Mr. Green to have the divorce action filed and timely prosecuted as he expected to be activated and sent overseas.

"3. On May 30, 2002, Ms. Green filed a 'protection from abuse' case against Mr. Green. The Court scheduled a hearing on the petition for June 17, 2002. On June 7, 2002, the Respondent entered his appearance in behalf of Mr. Green in the 'protection from abuse' case. The Respondent continued the hearing scheduled for June 17, 2002. Thereafter, the Respondent negotiated a 'consent agreement' between the parties, resulting in a mutual restraining order between the parties.

"4. Mr. Green placed numerous telephone calls to the Respondent. The Respondent failed to return nearly all of the telephone calls.

"5. In October, 2002, the Respondent informed Mr. Green that he filed the divorce case. However, the Respondent had not filed a divorce case in behalf of Mr. Green. (Mr. Green learned this fact by checking with the District Court of Clay County.)

"6. In January, 2003, Mr. Green again called the Respondent to discuss the status of the representation. The Respondent was not available at the time Mr. Green called. At that time, Mr. Green talked with the Respondent's wife. Mr. Green made it clear to the Respondent's wife that he was not satisfied with the representation to date. Shortly thereafter, the Respondent wrote Mr. Green a brief letter. In the letter, the Respondent stated

'My wife informed me of your recent phone call and your questions concerning your divorce. A hearing has been scheduled for February 25, 2003 at 10:30 a.m. at the Courthouse in Clay Center. I will call you tomorrow and verify this information with you. I believe that if you continue to have problems with my representation of you, I will withdraw and you can seek other counsel.'

The Respondent did not call Mr. Green the following day as promised.

"7. In preparation for his divorce hearing, Mr. Green took two days off of work. On February 25, 2003, at 8:49 a.m., the Respondent called Mr. Green. The Respondent stated that the judge was tied up in a jury trial. He asked whether Mr. Green could travel to Riley County, Kansas, that day in the event the Respondent could get it heard in that county. Mr. Green told the Respondent that he was available. The Respondent told Mr. Green that he would call him back later that day. The Respondent did not call back that day.

"8. The following week, Mr. Green called the Respondent. The Respondent informed Mr. Green that he did not have any information, but that the Respondent would visit with Mr. Green about the status of his case on the following Monday.

"9. On March 3, 2003, (the following Monday) the Respondent called Mr. Green. However, when the Respondent called Mr. Green, he again told him that he did not have any information. The Respondent promised to call Mr. Green later that day whether or not the Respondent had any news for Mr. Green. The Respondent failed to call Mr. Green later that day.

"10. On March 5, 2003, Mr. Green called the Respondent. The Respondent answered the telephone. The Respondent told Mr. Green that he was having a hard time hearing Mr. Green, as Mr. Green had called from his mobile telephone. Mr. Green stopped at the nearest truck stop and called the Respondent from a pay phone. The Respondent's son answered the telephone. The Respondent's son seemed to be unable to hear Mr. Green. Mr. Green called the Respondent four times from four different telephones at the truck stop. During the fourth telephone call, Mr. Green overheard the Respondent tell his son that he knew who was calling and to hang up the telephone.

"11. Thereafter, the Respondent directed his roommate, who held a power of attorney, to terminate the Respondent's employment. On March 10, 2003, Mr. Green wrote to the Respondent— confirming that the Respondent had been fired and requesting that the Respondent refund the funds paid to him by Mr. Green.

"12. Mr. Green sent a copy of his March 10, 2003, letter to the Respondent to the Disciplinary Administrator along with his letter of complaint.

"13. On March 14, 2003, the Deputy Disciplinary Administrator wrote to the Respondent, informed him that Mr. Green filed a complaint, and asked the Respondent to provide a written response to the complaint within twenty days. The Respondent failed to respond to the letter from the Deputy Disciplinary Administrator.

"14. The Deputy Disciplinary Administrator assigned the investigation of Mr. Green's complaint to the Kansas Bar Association Ethics and Grievance Committee. John Gatz, Chairman of the KBA Ethics and Grievance Committee assigned Sharon W. Kellstrom to investigate the complaint filed by Mr. Green against the Respondent. On April 4, 2003, Ms. Kellstrom wrote to the Respondent, notified him of her appointment, and asked him to call her to discuss the complaint. The Respondent failed to contact Ms. Kellstrom.

"15. After terminating the Respondent's services, Mr. Green hired Gary D. Denning to file the divorce case. On March 25, 2003, Mr. Denning filed a divorce case in behalf of Mr. Green. The Court executed a decree of divorce in Mr. Green's divorce case on July 28, 2003.

"16. The Respondent refunded $900.00 of the $1,100.00, paid by Mr. Green.

### "Complaint of Marcia Samples

"17. In 1999, Marcia Samples injured her knee while she was working. That same year, Ms. Samples retained the Respondent to assist her with a worker's compensation claim. At the time, the Respondent was a partner in the law firm of Ryan, Condry & Wenger. The Respondent provided Ms. Samples with adequate representation from 1999 until September, 2001.

"18. In September, 2001, the Respondent wrote to opposing counsel Jeffrey Brewer, suggesting that Ms. Samples was ready to consider settlement. However, Ms. Samples was not ready to consider settlement and had not given the Respondent authorization to send the letter.

"19. Beginning in January, 2002, Ms. Samples began having trouble contacting the Respondent. Ms. Samples called the Respondent by telephone and sent the Respondent letters. The Respondent did not return Ms. Samples' telephone calls nor did he respond to her letters. Occasionally, however, Ms. Samples was able to make contact with the Respondent.

"20. Ms. Samples sent the Respondent requests for reimbursement for mileage and expenses. The Respondent took no action on Ms. Samples' requests for reimbursement for months at a time. Finally, in May, 2002, the Respondent sought and obtained a partial reimbursement for Ms. Samples for the period January, 2002, through April, 2002. However, the amount of the reimbursement was incorrect.

"21. In July, 2002, the Respondent wrote to Ms. Samples and informed her that he was leaving the law firm of Ryan, Condry & Wenger. Because the Respondent was so familiar with her claim, Ms. Samples agreed to continue to have the Respondent represent her. Ms. Samples signed a new contract.

"22. After leaving the law firm, the Respondent failed to notify Ms. Samples of his new business address. Ms. Samples was unable to locate the Respondent for a couple of months. Finally, in September, 2002, Ms. Samples looked in the telephone book and located the Respondent's home telephone number and address. After some difficulty, Ms. Samples was able to reach the Respondent at his home.

"23. On numerous occasions, Ms. Samples asked the Respondent to seek referrals to two specialists.

"24. On January 7, 2003, Ms. Samples contacted the Respondent by telephone. She again asked the Respondent about the status of the requested referrals. The Respondent informed Ms. Samples that an appointment had been made for her at the University of Kansas Medical Center for January 29, 2003. The Respondent informed Ms. Samples that the appointment had been approved by the insurance company. However, the appointment had not been approved by the insurance company.

"25. During that same conversation, Ms. Samples asked the Respondent about the referral to the other specialist, one in Wichita, Kansas. The Respondent told Ms. Samples that a tentative appointment had been made but he was waiting for confirmation from Mr. Brewer. The Respondent promised to call Ms. Samples during that week with more information. The Respondent failed to call Ms. Samples as promised.

"26. At some point, the Respondent advised Ms. Samples that he had scheduled a preliminary hearing in her worker's compensation case for March 11, 2003. However, he had not. Ms. Samples, however, believed that she had a preliminary hearing scheduled in her worker's compensation case.

"27. Because the Respondent failed to call, on January 27, 2003, Ms. Samples called the specialist's office in Wichita, Kansas. The doctor's office had not heard from the Respondent nor did it have any record of a tentative appointment for Ms. Samples.

"28. On January 29, 2003, Ms. Samples filed a complaint with the Disciplinary Administrator's office.

"29. On February 4, 2003, Al Walczak, Deputy Disciplinary Administrator, wrote to the Respondent, informed him that Ms. Samples filed a complaint, and asked the Respondent to provide a written response to the complaint within fifteen days. The Respondent failed to respond to Mr. Walczak's first letter.

"30. On March 6, 2004, Ms. Samples again wrote to the Respondent. She demanded that he formally withdraw from her case and forward her documents to a different attorney. The Respondent failed to comply with Ms. Samples' demands.

"31. On March 14, 2003, Mr. Walczak sent the Respondent a second letter, directing him to provide a written response to the complaint within ten days. Mr. Walczak warned the Respondent that if a response was not forthcoming, the matter would be docketed for investigation. The Respondent failed to respond to Mr. Walczak's second letter.

"32. Mr. Walczak also called Mike Ryan, the Respondent's former law partner. Mr. Ryan then attempted to contact the Respondent on behalf of Mr. Walczak. Also, because Mr. Walczak became aware that Debra James was familiar with the Respondent and his difficulties, Mr. Walczak contact[ed] Ms. James. Ms. James contacted the Respondent and was able to retrieve Ms. Samples' client file.

"33. Mr. Walczak docketed the case for investigation and assigned the investigation of Ms. Samples' complaint to the Kansas Bar Association Ethics and Grievance Committee. Again, Mr. Gatz assigned Sharon W. Kellstrom to investigate the complaint filed by Ms. Samples against the Respondent. The letter that Ms. Kellstrom sent on April 4, 2003, referenced both complaints. As stated above, the Respondent failed to respond to Ms. Kellstrom's letter.

"34. On February 20, 2003, Ms. Samples was able to contact the Respondent by telephone. During the telephone conversation, the Respondent expressed his displeasure that Ms. Samples had filed a disciplinary complaint. The Respondent told Ms. Samples that he no longer wished to represent her. Ms. Samples directed that the Respondent withdraw on or before February 28, 2003. The Respondent failed to withdraw from Ms. Samples' case.

"35. Because she believed that she had a preliminary hearing scheduled for March 11, 2003, in her worker's compensation case and because she believed that the Respondent would no longer be representing her, Ms. Samples called the court.

[Here, a footnote from the hearing panel stated:] It was not until Ms. Samples received Judge Moore's letter of March 4, 2003, that she learned that the Respondent had not scheduled a preliminary hearing for March 11, 2003.

Administrative Hearing Judge Bruce Moore answered the telephone. Ms. Samples explained her situation. Judge Moore made it clear to Ms. Samples that in order for the Respondent to withdraw he had to file a motion and the motion had to be approved by the court.

"36. Judge Moore scheduled a hearing in Ms. Samples' case for April 9, 2003, and provided the Respondent with formal written notice of the hearing. On April 9, 2003, the Respondent failed to appear at the hearing. During the hearing, the Court, Ms. Samples, and Mr. Brewer attempted to determine the status of various payments to Ms. Samples. Also, during the hearing, Judge Moore removed the Respondent as counsel of record.

"37. Thereafter, Ms. Samples retained new counsel. Her worker's compensation claim remains pending.

### "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 8.1, Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b), as detailed below.

"2. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a) Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c) Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. Accordingly, the Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"3. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Mr. Green and Ms. Samples when he failed to properly prepare and thoroughly represent them. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"4. KRPC 1.2(a) provides:

> 'A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and **shall consult with the client as to the means which the lawyer shall choose to pursue**. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive the jury trial and whether the client will testify.'

(Emphasis added.) The Respondent failed to consult with Ms. Samples prior to sending a letter requesting that the parties engage in settlement talks. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.2(a).

"5. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. Green and Ms. Samples when he failed to make any progress in their cases for extended periods of time. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Green and Ms. Samples, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"6. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to return telephone calls and respond to letters from Mr. Green and Ms. Samples. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"7. KRPC 1.16(d) provides:

> 'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent failed to 'take steps to the extent reasonably practicable to protect' Ms. Samples when he failed to withdraw from her representation as requested. The Hearing Panel concludes that, accordingly, the Respondent violated KRPC 1.16(d).

"8. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite Ms. Samples' worker's compensation case. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"9. Lawyer must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirement in this regard:

'[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority. . . .'

KRPC 8.1(c):

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The Respondent knew that he was required to forward written responses to the initial complaints—he had been instructed to do so in writing by Mr. Diehl, Mr. Walczak, and Ms. Kellstrom. Because the Respondent knowingly failed to provide written responses to the initial complaints filed by Mr. Green and Ms. Samples as requested by Mr. Diehl, Mr. Walczak, and Ms. Kellstrom, the Hearing Panel concludes that the Respondent knowingly violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"10. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he advised Mr. Green that his divorce case had been filed, when it had not; when he advised Mr. Green that a hearing had been set, when it had not; when he advised Ms. Sample that an appointment had been set with a specialist, when no contact had even been made by him with that specialist. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"11. Kan. Sup. Ct. R. 211(b) provides, in pertinent part:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide competent and diligent representation and adequate communication.

"*Mental State.* The Respondent intentionally violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to Mr. Green and Ms. Samples. Mr. Green was unable to obtain a divorce for 12 months. Mr. Green missed work, and therefore compensation, unnecessarily. The Respondent told Ms. Samples that the doctor's appointment with the specialist at the University of Kansas Medical Center was approved by the insurance company when it was not. As a result, Ms. Samples is financially responsible for that bill. The bill remains in collection because Ms. Samples is unable to pay it. Additionally, Ms. Samples was repeatedly financially injured by the Respondent when he failed to properly submit her requests for reimbursement. Ms. Samples' worker's compensation case did not progress for more than two years because of the Respondent's inattention.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined. On May 15, 1991, the Iowa Supreme Court in-

definitely suspended the Respondent from the practice of law for having violated EC 1-5 and DR 102(a)(1), (3), (4), and (6). Additionally, the Court found that the Respondent provided false testimony and offered a false document at the Iowa disciplinary hearing. On June 16, 1994, the Iowa Supreme Court reinstated the Respondent to the active practice of law.

"Subsequently, on November 19, 1998, the Iowa Supreme Court again suspended the Respondent's license to practice of law. The Respondent failed to comply with the annual continuing legal education requirements. The Respondent's license to practice law in Iowa remains suspended.

"Finally, on October 6, 2003, the Kansas Supreme Court suspended the Respondent's license to practice law for failing to pay the annual registration fee and for failing to pay the annual continuing legal education fee. The Respondent's license to practice law in the state of Kansas remains suspended.

"A Pattern of Misconduct. Included in this case are two complaints. The complaints involve similar misconduct. Additionally, the Respondent has previously been discipline[d]. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.16, [KRPC 3.2], KRPC 8.1, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211. As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that he was required to provide written responses to the complaints filed by Mr. Green and Ms. Samples. The Respondent never filed such responses. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Vulnerability of Victim. Mr. Green was vulnerable to the Respondent's misconduct because he is unsophisticated and unacquainted with the legal system. Ms. Samples was vulnerable to the Respondent's misconduct because she placed all of her trust in the Respondent.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1996. Additionally, the Respondent was licensed to practice law in the state of Iowa beginning in 1977. At the time the Respondent engaged in misconduct, the Respondent had been an active attorney for more than 20 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. The Respondent reimbursed Mr. Green $900 of the $1,100 paid by Mr. Green.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.' Standard 4.41.

'Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.' Standard 7.1.

'Disbarment is generally appropriate when a lawyer:

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of mis-

conduct that cause injury or potential injury to a client, the public, the legal system, or the profession.' Standard 8.1.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred from the practice of law in the state of Kansas.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

The respondent takes exception to the discipline imposed by the panel regarding the injuries sustained by both Green and Samples. All other parts of the hearing report are thus deemed admitted. See Supreme Court Rule 212(c) (2004 Kan. Ct. R. Annot. 285) ("Any part of the hearing report not specifically excepted to shall be deemed admitted.").

"Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citation omitted.] This court has the duty in a disciplinary proceeding to examine the evidence and determine for itself the judgment to be entered. *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993). Although the panel's report is advisory only, it should be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consists of sharply conflicting testimony. 252 Kan. at 406. Therefore, this court should examine the disputed findings of fact and determine whether they are supported by the evidence." *In re Kellogg*, 269 Kan. 143, 153, 4 P.3d 594 (2000).

At the outset, the Disciplinary Administrator cites *In re Lewis*, 265 Kan. 766, 962 P.2d 534 (1998), in arguing that the respondent should be limited as to any argument he may have concerning the facts of this case because he did not appear at the hearing but then filed exceptions to the hearing report. In *Lewis*, the respondent did not appear at the hearing but later filed exceptions to the report and, on review, this court limited oral argument to whether this matter should be remanded to the panel for rehearing or, in the alternative, whether the recommended discipline should be imposed. Unlike the respondent's case, Lewis had argued that he did not have notice of the hearing and had specifically asked the court to grant a rehearing. 265 Kan. at 777.

Rule 212(c) does not place any prohibitions on whether an attorney who does not appear at the hearing may file exceptions to the final hearing report. Thus, we consider the respondent's exceptions. See also *In re Kershner*, 250 Kan. 383, 387, 827 P.2d 1189 (1992) (Rule 212 allowed attorney who did not appear at the hearing to file exceptions to the committee's report).

The respondent argues no evidence was presented that Green was financially or otherwise injured as a result of the delay in the proceedings. He argues that although Green wanted the divorce completed by July 2002, Green understood that no work was to be commenced on the divorce until he paid the $1,000 retainer in October 2002. The respondent acknowledges a delay in finalizing the divorce proceedings, but he attributes this to the delay in payment and the 60-day waiting period before a divorce can become final. The respondent points out that he returned $900 of the retainer fee to Green and he had provided him satisfactory representation in another case.

The respondent's argument is without merit and overlooks several important facts. First, Green testified that they had agreed that the petition would not be filed until the entire retainer fee was paid; however, when Green paid the retainer fee in full in October 2002, the respondent told Green that he had filed the divorce action when in fact he had not. The respondent did not file Green's divorce petition and the 60-day waiting period was not an issue. Had the case been filed in October 2002, it likely would have been resolved much sooner than July 2003, when the proceedings were finalized under another attorney. Green advised the respondent in the first interview that it was important to obtain the divorce as soon as possible because he may be required to report for duty overseas. Without question, Green suffered harm in the delay in obtaining his divorce.

Second, although the respondent did eventually return $900 of the $1100 retainer fee, Green still suffered a $200 loss. The fact that the respondent had represented Green in a protection from abuse action concerning his common-law wife in June 2002 has no bearing on whether he suffered any injury in connection with the divorce proceedings. Finally, the respondent informed Green by

letter that a divorce hearing had been scheduled for February 25, 2003, although he had never filed the divorce petition. In preparation for this hearing which never occurred, Green took off 2 days of work which "really cut into [his] pay." Clear and convincing evidence supported the panel's finding that Green suffered actual injury as a result of the respondent's misconduct.

The respondent took exception to the panel's finding that Samples had suffered financial injury through his misconduct in handling her workers compensation case. The respondent argues that Samples' testimony that she had approximately $5,000 due in mileage reimbursement was suspect because by his calculations she would have had to travel 15,625 miles between May 2002 and February 2003. He argues Samples testified that she had six surgeries while being represented by the respondent and she received some reimbursement. Finally, he points to the fact that she had also filed a complaint against the insurance carrier's attorney at the same time she filed the complaint against him.

Once again, the respondent's arguments are without merit. Although the respondent attacks the $5,000 figure for travel/mileage reimbursement which the respondent had failed to adequately submit, the panel in this case did not adopt the $5,000 figure. Rather, the panel simply noted that she was repeatedly financially injured by the respondent's failure to submit her requests for reimbursement. Samples testified that she had to borrow from friends and family in order to meet these expenses. It is important to note that the exact dollar amount is not at issue, as Samples' new attorney was able to subsequently obtain most of these reimbursements, lending credence to her testimony. The important fact is that the respondent was not diligent in obtaining the milage reimbursements to which Samples was entitled, which repeatedly caused her financial hardship and delayed the time in which she was to receive the reimbursements.

Samples testified and the hearing panel found that the respondent provided Samples with adequate representation from 1999 until September 2001. However, the fact that the respondent was able to obtain some relief for Samples does not change the respondent's subsequent actions and their financial consequences to

Samples. Finally, the fact that she had filed another complaint concerning a different attorney had no effect on the financial injuries Samples suffered at the hands of the respondent.

Clear and convincing evidence established that the respondent failed to submit Samples' mileage reimbursements causing a delay of nearly 2 years in obtaining full reimbursement, that her case did not progress for 2 years because of the respondent's inattention and refusal to formally withdraw from the case, and that Samples incurred a $240 doctor bill which is now in collections after visiting a specialist the respondent had erroneously told her was approved by the insurance company. The respondent's contention that Samples suffered no financial injury is without merit.

We conclude that the findings of the panel are supported by clear and convincing evidence. We adopt the above findings made by the panel. We also conclude that the findings made by the panel support its legal conclusions, and we adopt those conclusions.

The respondent contends that suspension is a more appropriate discipline in his case. In assessing the appropriate discipline, we are not bound by the recommendations made by the Disciplinary Administrator or the panel. In disciplinary proceedings, this court has a duty to examine all the evidence and to determine the judgment to be issued. *In re Rumsey*, 276 Kan. 65, 78, 71 P.3d 1150 (2003).

The respondent cites a plethora of cases in arguing that disbarment in this case would be inappropriate and suspension or reprimand would be more appropriate. However, as the discipline must be based on the specific facts and circumstances of each case, this court has found that other disciplinary actions provide little guidance in evaluating the discipline to be imposed in the case at hand. Historically, we have applied the ABA Standards for Imposing Lawyers Sanctions as a guide for determining the appropriate discipline. *In re Rumsey*, 276 Kan. at 78. (citing *In re Wagle*, 275 Kan. 63, 75-76, 60 P.3d 920 [2003]).

We have considered the ABA standards for reprimand, suspension, and disbarment. We have also considered the panel's findings concerning the nature of the duty violated, the attorney's mental state, the potential or actual injury caused by the misconduct, and

the existence of aggravating or mitigating factors. See ABA Standards for Imposing Lawyer Sanctions, § 3 (1991 ed.). In addition, we consider the statements of the Disciplinary Administrator and the respondent as well as the recommendation of the panel.

The record establishes and the respondent admits that he violated his duty to his clients to provide competent and diligent representation and to maintain adequate communication. The respondent did not *accidentally* fail to represent his clients or fail to respond to their numerous attempts to contact him nor did he accidentally engage in dishonest conduct by advising his clients that he had filed cases and set hearings and doctor's appointments when he in fact had not. As the Disciplinary Administrator suggests, the only logical conclusion is that the respondent's actions were willful and purposeful and not accidental. Thus, the panel properly concluded that the respondent intentionally violated his duties, and a sanction of reprimand would thus not be applicable in this case.

The respondent caused actual harm to both of his clients. Green's divorce proceedings were delayed and he lost 2 days of compensation from work. Likewise, Samples incurred a $240 medical bill, was repeatedly financially injured when her medical reimbursements were delayed, and her case progressed slowly over 2 years based on the respondent's misconduct. In addition, the respondent in both cases ignored all attempts to obtain his cooperation during the investigations and the panel's hearing. While these factors alone most probably would not support disbarment, when the respondent's intentional misconduct and failure to cooperate are considered with his disciplinary proceedings in Iowa, we arrive at a different conclusion.

The respondent argued before this court that his previous suspension in Iowa was remote in time and should not be considered by this court in its determination of the discipline to be imposed. Contrary to his contention, we do not find that the discipline imposed in Iowa remote in time. For extended periods of time in Iowa and in Kansas, the respondent has not practiced law. Moreover, the connections between the respondent's acts in Iowa and his conduct in Kansas are strikingly similar. In Iowa, the respondent had failed to diligently pursue a matter entrusted to him and he

did not cooperate with an investigation of a disciplinary complaint. Additionally, he had fabricated evidence and had given false testimony at the disciplinary hearing. See *Committee on Professional Ethics & Conduct v. Wenger*, 469 N.W.2d 678, 679 (Iowa 1991). In Kansas, the respondent lied to his clients and neglected matters entrusted to him. He failed to cooperate with the investigations of his disciplinary complaints, failed to file an answer to the complaints, and failed to participate in the panel hearing although he had been notified of the time and place of the hearing. In Iowa, the respondent's misconduct resulted in a suspension.

Disbarment is generally appropriate when a lawyer has been suspended for the same or similar misconduct and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

Under all the circumstances, including the respondent's intentional misconduct in Kansas after having been suspended in Iowa for similar misconduct, we agree with the recommendation of the panel and the Disciplinary Administrator. We conclude that disbarment is the more appropriate discipline in the respondent's case.

IT IS THEREFORE ORDERED that James D. Wenger be and he is hereby disbarred from the practice of law in the state of Kansas and his license and privilege to practice law are hereby revoked.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of James D. Wenger from the roll of attorneys licensed to practice law in the state of Kansas.

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports, that the costs herein shall be assessed to the respondent, and that the respondent forthwith shall comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301).

LOCKETT, J., retired, assigned.