No. 93,923

In the Matter of CHARLES E. WATSON, *Respondent*.

(121 P.3d 982)

Opinion filed October 28, 2005.

*Janith A. Davis*, deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Charles E. Watson*, of Wellington, argued the cause and was on the briefs pro se.

*Per Curiam*: This is a contested proceeding in discipline filed by the office of the Disciplinary Administrator against Charles E. Watson, an attorney licensed to practice law in the State of Kansas since 1954. Watson's last registration address with the Clerk of the Appellate Courts of Kansas is in Wellington, Kansas.

The formal complaint, as amended, consolidated three disciplinary cases and labeled each as a separate count under which it was alleged that respondent committed multiple rule violations. A hearing panel of the Kansas Board for the Discipline of Attorneys determined that respondent violated Kansas Rules of Professional Conduct (KRPC) 1.1 (2004 Kan. Ct. R. Annot. 342) (competence); KRPC 1.2 (2004 Kan. Ct. R. Annot. 350) (scope of representation); KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence); KRPC 3.1 (2004 Kan. Ct. R. Annot. 438) (meritorious claims); and KRPC 3.3 (2004 Kan. Ct. R. Annot. 444) (candor to the tribunal).

The respondent has filed exceptions to much of the final hearing report. Each paragraph of the report's findings of fact, conclusions, and recommended discipline to which respondent filed exceptions is marked with a checkmark for ease of reference. As the hearing panel found no violations relative to Count III, the panel's findings of fact relative thereto are omitted in the following recitation of the final hearing report:

## "FINDINGS OF FACT

. . . .

### "DA8539

"2.   In January 1998, Eric Allen and Sherti Allen, n/k/a Sherri Clark, were divorced. The Court awarded Mr. Allen and Ms. Clark joint custody of the parties' children. Ms. Clark was granted residential custody and Mr. Allen was provided with visitation.

"3.   Mr. Allen remarried. His new wife's name is Marya Allen. Thereafter, Mr. Allen began having difficulty enforcing his visitation rights. Additionally, Mr. and Mrs. Allen discovered that the children were residing with their maternal grandparents, rather than with their mother, Ms. Clark.

✔ "4.   On July 21, 2000, Mr. and Mrs. Allen met with the Respondent. They informed the Respondent that they wished to enforce visitation and obtain custody. The Respondent told Mr. Allen that he needed to have proof that the children were living with their grandparents. Mr. Allen told the Respondent that he had hired a private investigator to document where the children were living.

✔ "5.   On October 23, 2000, the private investigator called the Respondent by telephone and provided him with the results of the surveillance, establishing that the children were living with the maternal grandparents.

✔ "6.   The Respondent failed to file a motion to enforce visitation rights or a motion to change custody as requested by his clients, Mr. and Mrs. Allen.

✔ "7.   Finally, on April 10, 2001, nearly six months after the surveillance information was received, the Respondent filed a motion to enforce visitation. The Respondent set the motion for hearing on May 1, 2001. Even though Mr. and Mrs. Allen repeatedly requested the Respondent to file a motion to change custody, the Respondent did not do so.

"8.   Also on April 10, 2001, Ms. Clark accused Mr. Allen of abusing the children. Thereafter, a Missouri social service agency investigated the allegation. On May 7, 2001, Ms. Clark filed a motion requesting that she be awarded sole custody of the children.

✔ "9.   On June 4, 2001, the Respondent filed a motion requesting that the children undergo a mental and physical evaluation. The Respondent failed to set the motion for hearing.

"10.   On July 10, 2001, the Missouri social service agency concluded that the claim that Mr. Allen abused the children was unsubstantiated. Despite this fact, on July 19, 2001, Ms. Clark filed a motion to suspend Mr. Allen's visitation time with the children. The hearing was scheduled to be heard on August 7, 2001. The hearing on Ms. Clark's motion was continued to August 14, 2001.

"11.   On August 14, 2001, the Court conducted a telephone conference hearing. The Respondent appeared in behalf of Mr. Allen at that time. During the telephone hearing, the Respondent agreed to allow Mr. Allen's visitation to be suspended. However, the Respondent did not have Mr. Allen's permission to agree to such a suspension.

✔ "12. On August 16, 2001, the Respondent finally filed a motion to change custody. However, again, the Respondent failed to set the motion for hearing.

✔ "13. Throughout the representation, Mr. and Mrs. Allen continued to provide the Respondent with written documentation to support their position. The Respondent failed to review the material.

"14. On February 19, 2002, Mrs. Allen terminated the Respondent's representation.

"15. Thereafter, on February 27, 2002, Mr. and Mrs. Allen retained Jennifer Passiglia, an attorney in Winfield, Kansas. As a result of Ms. Passiglia's efforts, in August, 2002, the Court awarded Mr. and Mrs. Allen residential custody of the children.

"DA9005

✔ "16. In 1959, John Chevraux created a trust for his adult son and daughter. Mr. Chevraux's children were disabled and required caretakers. The trust provided that on the death of Mr. Chevraux's children, the trust would continue for any grandchildren. If there were no grandchildren, and if Mr. Chevraux's wife was deceased, then the trust would terminate and be distributed to Mr. Chevraux's nieces and nephews.

"17. Mr. Chevraux died in 1971, his wife passed away in 1983, and their daughter died, without having had any children, in 1984. As of 1984, Mr. Chevraux's son, Leroy Chevraux, was the only beneficiary of the multi-million dollar trust created by his father.

"18. On August 3, 1999, Leroy Chevraux, at age eighty-two, adopted two adult siblings. The adoption occurred in Sumner County, Kansas. The two adult siblings were the biological grandchildren of his long-time caretakers. Four days later, Leroy Chevraux died.

"19. Thereafter, Carol Long, a niece of Mr. Chevraux, retained the Respondent to represent her and the other nieces and nephews who, prior to the adoption, would have received the proceeds from the trust at distribution. The Respondent filed a declaratory judgment action in Harper County District Court, titled *Long v. Winkelman*, alleging that the grantor of the trust had no grandchildren because the adoption was void. The district court granted a motion for summary judgment in favor of the Winkelmans. The Respondent filed and prosecuted an appeal in *Long v. Winkelman*. On appeal, the Kansas Court of Appeals affirmed the district court's ruling.

"20. The nieces and nephews also sought to intervene in the trust matter, titled *In re John J. Chevraux Trust*, filed in Sumner County, Kansas. The district court ruled, however, that the adoption could not be collaterally attacked and that the nieces and nephews did not have standing to intervene in the trust case. The Respondent also appealed this decision. Again, the Kansas Court of Appeals affirmed the district court.

"21. Finally, in September 2000, the Respondent filed a petition for relief from the decree of adoption in Sumner County, Kansas, alleging that the adoption

was fraudulent because the Court had not been advised of Leroy Chevraux's mental capacity and that the adoption was void because his clients had not been given notice. The Court dismissed the petition finding the fraud claim had not been timely filed and the nieces and nephews were not entitled to notice of the adoption. The Respondent did not appeal the Court's order.

"22. Then in July 2002, the Respondent filed *Tihen v. Winkelman,* in Sumner County, Kansas. The Court determined that the case alleged the same cause of action as *Long v. Winkelman* and dismissed it. The Court imposed sanctions against the Respondent and his clients. The Respondent failed to inform his clients that the Court dismissed the case and imposed sanctions. [In a footnote to this finding, the final hearing report states that an attorney contacted Ms. Tihen to collect the attorney fees judgment. Ms. Tihen paid $7,506.14 in sanctions and Respondent, as of the date of the final hearing report, has paid nothing.]

"23. The Respondent filed a notice of appeal of the Court's decision in *Tihen v. Winkelman.* However, the Respondent failed to docket the appeal within twenty-one days, as required. After the twenty-one days passed, on June 17, 2003, the defendant's attorney filed a motion to dismiss. The motion was set for hearing on June 24, 2003. The Respondent appeared, however, he was unprepared to argue the motion. The Court continued the matter to July 7, 2003, to allow the Respondent ample time to prepare to argue the motion.

✔ "24. On July 7, 2003, the Respondent filed a written response to the motion. In the Respondent's written response, the Respondent alleged that: 'The Plaintiffs have moved the Court of Appeals to permit the Plaintiffs to docket their appeal out of time instanter.' The Respondent cited *Sanders v. City of Kansas City*, 18 Kan. App. 2d 688, 858 P.2d 833 (1993), and argued that as long as the motion to docket the appeal out of time is filed and pending, the District Court did not have jurisdiction to dismiss the appeal. The Court agreed and did not dismiss the appeal.

"25. However, contrary to the Respondent's written response, the Respondent had not filed a 'motion to docket the appeal out of time instanter.' On July 9, 2003, the District Court confirmed that a motion to docket the appeal of time had not been filed. On that same date, the District Court dismissed the appeal.

. . . .

## "CONCLUSIONS OF LAW

✔ "1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 3.1, and KRPC 3.3, as detailed below.

✔ "2. Lawyers must provide competent representation to their clients. KRPC 1.1 [provides:] 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Eric Allen when he failed to review materials provided in behalf of his client and when he failed to thoroughly prepare and file a motion to change custody. Additionally, the Respondent failed to com-

petently represent Mrs. Long and her cousins when he failed to timely and appropriately challenge the adoption. Within the statute of limitations, the Respondent was put on notice by the Court that he filed the adoption challenge in the wrong county. Despite this fact, the Respondent failed to challenge the adoption in Sumner County until after the statute of limitations had passed. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

✔ "3.   KRPC 1.2 provides:

'(a) A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means which the lawyer shall choose to pursue. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.'

The Respondent failed to 'abide by [his] client's decisions concerning the lawful objections of representation,' when he failed to prepare and file a motion to change custody for Mr. Allen. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.2.

✔ "4.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. Allen when he failed to timely prepare a motion to enforce visitation and when he failed to prepare and file a motion to change custody. The Respondent also violated KRPC 1.3 in his representation of Mrs. Long and her cousins. The Respondent failed to act diligently in contesting the adoption proceeding. Because the Respondent filed a challenge to the adoption outside the time period allowed by law, Mrs. Long and her cousins were foreclosed from seeking to obtain the assets of the trust. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Allen, Mrs. Long, and Mrs. Long's cousins, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

✔ "5.   KRPC 3.1 prohibits attorneys from bringing or defending a proceeding that is frivolous. Specifically, that rule provides, in pertinent part:

'A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.'

The Respondent violated KRPC 3.1 when he filed *Tihen v. Winkelman*, based upon the same legal theories advanced in *Long v. Winkelman*. The Respondent did not set forth any new theories in *Tihen v. Winkelman*. Because all of the legal theories presented in *Tihen v. Winkelman* had previously been addressed and dismissed by the Court in *Long v. Winkelman*, the Hearing Panel concludes that the Respondent violated KRPC 3.1.

✔ "6.   'A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' KRPC 3.3(a)(1). In this case, the Respondent violated KRPC

3.3(a)(1) when he falsely informed Judge Solomon that '[t]he Plaintiffs have moved the Court of Appeals to permit the Plaintiffs to docket their appeal out of time instanter.' The Respondent's statement is material based on the fact that the Respondent argued that because the motion to docket the appeal out of time had been filed and was pending, the District Court did not have jurisdiction to dismiss the appeal. Based upon the Respondent's statement, the Court did not dismiss the appeal. The Hearing Panel concludes that because the Respondent knowingly made a false statement of material fact, the Respondent violated KRPC 3.3(a)(1)."

The panel then made the following recommendations as to discipline.

### "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

✔ "*Duty Violated.* The Respondent violated his duty to provide competent and diligent representation. The Respondent violated his duty to the legal profession to maintain personal integrity.

✔ "*Mental State.* The Respondent knowingly violated his duties.

✔ "*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on four occasions.

"On February 28, 1975, the Disciplinary Administrator informally admonished the Respondent for having violated DR 1-102(A)(6), for speaking intemperately to a fellow attorney and an opposing party.

"On February 10, 1987, the Disciplinary Administrator informally admonished the Respondent for having violated DR 6-101(A)(3), for neglecting an estate matter for nearly four years.

"On April 19, 1996, the Kansas Supreme Court censured the Respondent for having violated MRPC 1.1 and MRPC 3.3(d). The Kansas Supreme Court directed that the censure not be published in the Kansas Reports.

"On April 26, 2000, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 4.2, by contacting a party represented by counsel concerning the matter of the representation.

✔ "Dishonest or Selfish Motive. When the Respondent falsely informed Judge Solomon that he had filed a motion to docket the appeal out of time instanter, in *Tihen v. Winkelman*, the Respondent engaged in dishonest conduct.

"A Pattern of Misconduct. Included in this case are two complaints wherein the Hearing Panel finds misconduct. The complaints involve similar misconduct. Additionally, the Respondent has previously been disciplined on four occasions. Some of the previous cases have included violations of the rules violated in this case. Accordingly, the Respondent engaged in a pattern of misconduct. Particularly troubling to the Hearing Panel is the fact that the Respondent has a previous discipline involving MRPC 3.3.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 3.1, and KRPC 3.3, in the representation of two separate clients. As such, the Respondent committed multiple offenses.

✔ "Refusal to Acknowledge Wrongful Nature of Conduct. In his initial responses and continuing throughout his testimony at the hearing, the Respondent refused to acknowledge the wrongful nature of his conduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1954. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 46 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

✔ "Absence of Dishonest or Selfish Motive. The Respondent argued that he lacked a dishonest or selfish motive and that constitutes a mitigating factor in this case. While the Hearing Panel agrees that the Respondent's misconduct does not appear to have been motivated by dishonesty or selfishness, the Hearing Panel points out that the Respondent's misconduct included dishonest conduct.

"Remoteness of Prior Offenses. The discipline imposed in 1975 and 1987, is remote in time to the misconduct in this case.

"The Deputy Disciplinary Administrator recommended that the appropriate sanction for the Respondent's misconduct is suspension from the practice of law for one year. The Respondent, on the other hand, recommended that the appropriate sanction is censure, not to be published in the Kansas Reports.

"The Hearing Panel has thoroughly reviewed the ABA Standards. It appears that the following Standards are most applicable:

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.' Standard 6.12.

"Based upon the findings of fact, conclusions of law, evidence in aggravation, as well as mitigation, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law in the state of Kansas for a period of one year."

## ANALYSIS

The principles governing the analysis of the issues raised by respondent were recently set forth by our court in *In re Lober*, 276 Kan. 633, 636-37, 78 P.3d 442 (2003):

"In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998). Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993); see also Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260) (misconduct to be established by clear and convincing evidence).

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. See *In re Carson*, 252 Kan. at 406; *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987); *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975); *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971). When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. Therefore, we do not reweigh the evidence or pass on the credibility of witnesses. *In re Rumsey*, 276 Kan. 65, 76, 71 P.3d 1150, 1158 (2003)."

One of the difficulties in analyzing respondent's contentions is the bare bones format he has utilized in designating his exceptions. For instance, the panel's findings of fact relative to wrongdoing are excepted to in the following format:

"1. Respondent excepts to the allegations contained in paragraph 4 of DA 8539."

Exceptions to all of the panel's conclusions of law are designated in like manner:

"The respondent excepts to conclusion of law number 1."

Respondent's brief relative to his exceptions is difficult to follow. However, his position may be summarized as follows. He disputes all conclusions of law made by the panel, each of which finds a violation of the Kansas Rules of Professional Conduct. He further excepts to the bulk of the findings of fact supporting these conclusions.

Respondent argues that the panel's findings of fact are not supported by clear and convincing evidence primarily because they are in conflict with respondent's recollection of events. Respondent disputes every conclusion of law because he denies any of his actions or inactions constituted any violation of the KRPC.

We apply the standards of analysis set forth previously herein in our citation of *In re Lober*, 276 Kan. 633. Having considered the record and the hearing panel report, we conclude respondent's misconduct has been established by substantial, clear, convincing, and satisfactory evidence, and respondent's violations of KRPC 1.1, 1.2, 1.3, 3.1, and 3.3 as found by the panel are established.

We turn now to the matter of the appropriate discipline to be imposed. The panel applies the ABA Standards and recommends the imposition of a 1-year suspension from the practice of law in Kansas. Respondent denies and disputes the wrongdoing and the aggravating factors found in the panel's discussion of appropriate discipline. However, if discipline is to be imposed, respondent asks for unpublished censure.

The majority of the court agrees with the panel's recommended discipline. A minority would impose a more severe discipline.

IT IS THEREFORE ORDERED that Charles E. Watson be suspended from the practice of law in the state of Kansas for a period of 1 year, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2004 Kan. Ct. R. Annot. 237).

IT IS FURTHER ORDERED that respondent forthwith comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301), that the costs of these proceedings be assessed to the respondent, and this opinion be published in the official Kansas Reports.

LARSON, S.J., assigned.