No. 95,963

In the Matter of BRADLEY P. SYLVESTER, *Respondent.*
144 P.3d 697

Opinion filed October 27, 2006.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Stephen M. Joseph*, of Topeka, argued the cause for respondent, and *Bradley P. Sylvester*, respondent, argued the cause pro se.

*Per Curiam*: This is a contested proceeding in discipline filed by the office of the Disciplinary Administrator against Bradley P. Sylvester, an attorney licensed to practice law in Kansas since 1989. Sylvester practices law in Wichita with the firm of Ney, Adams, & Sylvester, focusing on patent and criminal law.

This disciplinary proceeding arose from a single complaint filed by Mark Laas. Laas retained Sylvester in September 1997, to prepare and prosecute a patent application with the United States Patent and Trademark Office (USPTO). Laas paid Sylvester $4,700. In July 1998, Sylvester sent a letter to Laas, enclosing a copy of the patent application, indicating that the application had been sent to the patent office, and advising Laas that he should be receiving an application number at any time. Laas' patent application was actually filed by the patent office in January 1999.

In December 1999 and January 2000, the patent examiner contacted Sylvester by phone and requested him to submit drawings that were not included with the application. Sylvester did not send the drawings. In March 2000, the patent examiner sent a letter requesting the drawings again. The patent examiner established May 2000 as a deadline for submitting the drawings, or the application would be considered abandoned. Sylvester sent the drawings in May 2000.

In June 2000, Sylvester received notice of an office action by the patent examiner, requesting drawings and identifying problems with the application. The notice advised Sylvester that he had 3

months to correct the deficiencies or the application would become abandoned. In July 2000, Sylvester wrote to Laas to advise him that the application had been rejected. Sylvester suggested that the application be amended and noted that the response should be submitted by September 2000 to avoid an extension fee. Sylvester advised Laas that his services to amend the application would cost $600.

In October 2000, Sylvester sent Laas a copy of a request for an extension of time and a response to the patent examiner's notice of deficiencies. Within the documents, Sylvester certified that he had deposited the "correspondence with the U.S. Postal Service as first class mail, in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, with first class postage prepaid, this October 26, 2000." The documents were filed with the patent office on October 31, 2000. In December 2000, Sylvester sent Laas a bill for $600 for completing the response. Laas sent Sylvester a check for $600, and Sylvester sent Laas a receipt.

On January 23, 2001, the patent office sent Sylvester another notice, indicating that the communication filed in October was nonresponsive to some of the problems with the application and requesting corrections within 30 days. On September 6, 2001, the patent office sent Sylvester another notice stating that Laas' application had been abandoned because Sylvester had failed to respond to the request for corrections that had been sent in January 2001.

By January or February of 2002, Laas had not heard anything from Sylvester regarding his patent application. Laas attempted to look up his application on the patent office website. Unable to get any information about his patent application online, Laas called the patent office and learned that his application had been abandoned in September 2001 because Sylvester did not respond to the request for information.

Laas then attempted to contact Sylvester by phone and finally received an email from him on March 2, 2002. Sylvester stated that he would redraft the language of the application and refile it without charge. On April 7, 2002, Sylvester emailed Laas again, apol-

ogizing for his failure to rewrite the application and promising to finish it in approximately 10 days.

Laas did not hear from Sylvester again until November 25, 2002, when Sylvester sent him a letter in response to a certified letter from Laas. In his certified letter, Laas asked Sylvester what he planned to do to revive the patent application. Sylvester responded with another promise to revise Laas' patent application and send it to him for review by the week of December 9, 2002.

Contrary to his promise, Sylvester failed to provide the revised application. In January 2003, Laas contacted another attorney who referred Laas to Kenneth Iles, a patent attorney in Overland Park, Kansas. Iles telephoned Sylvester and communicated Laas' concerns. In response, Sylvester immediately contacted Laas and again promised to amend the application and file it as a new application.

By April 2003, Laas had still not received a revised patent application from Sylvester. Laas sent another certified letter to Sylvester requesting copies of all of the information and correspondence regarding his patent application within 5 working days. Sylvester responded approximately 3 weeks later, asking for a few more days to complete the application.

When Laas had not received anything from Sylvester by July 2003, he contacted Larry Michel to pursue a professional negligence action against Sylvester. Laas filed a complaint with the Disciplinary Administrator in February 2004 and filed a lawsuit against Sylvester in March 2004. The Disciplinary Administrator filed a formal complaint against Sylvester alleging that he violated KRPC 1.1 (2005 Kan. Ct. R. Annot. 356) (competence); KRPC 1.2(a) (2005 Kan. Ct. R. Annot. 365) (scope of representation); KRPC 1.3 (2005 Kan. Ct. R. Annot. 369) (diligence); KRPC 1.4(a) (2005 Kan. Ct. R. Annot. 383) (communication); and KRPC 8.4(g) (2005 Kan. Ct. R. Annot. 504) (misconduct).

A hearing panel convened and conducted an evidentiary hearing where both Sylvester and Laas testified. The hearing panel concluded that Sylvester violated KRPC 1.1 when "he failed to exercise the thoroughness and preparation necessary to fulfill the representation of Mr. Laas"; KRPC 1.2(a) when "he failed to consult with Mr. Laas as to the means which the Respondent was to pursue the

representation"; KRPC 1.3 when "he failed to diligently and promptly amend Mr. Laas' patent application"; KRPC 1.4(a) when "he failed to keep Mr. Laas reasonably informed regarding the status of his patent application." The hearing panel dismissed the allegation that Sylvester violated 8.4(g) because it concluded that he had violated 8.4(c) by deceiving Laas. The hearing panel further concluded that Sylvester knowingly violated his duties and caused potential or actual harm to Laas. After considering the aggravating and mitigating circumstances, the hearing panel recommended that we impose a 90-day suspension. In addition, the hearing panel recommended that Sylvester pay Laas $5,800 to reimburse him for the attorney fees paid to both Sylvester and Michel.

The hearing panel's conclusion that Sylvester violated KRPC 8.4(c) for deceiving Laas is based on Sylvester's testimony at the hearing. Contrary to the previously stated facts, Sylvester told the Disciplinary Administrator's investigator and later testified at his hearing that he did not mail the amendment for Laas' patent application to the patent office in October 2000 as he had certified in the copy he sent to Laas. To explain his failure to send the amendment, Sylvester testified:

"So I talked to Mr. Laas before the three-month extension of time to reply and what I told him is that I told him I didn't think this application was going to be successful in its present form and that a new application needed to be filed. I also remember distinctly telling him that the $600 would be better spent on a new application and that I wasn't going to charge him additional money for that. I do not recall anything being stated by either one of us about this present application continuing on in some respect. I do recall saying to him that we should move on to a new application because there's some things that in my opinion need to be done to get around what the examiner has trouble with.

. . . .

"And that was all done. And—and if—if he had said, for example, no, I don't want to file a new application, then I would have paid the $405 . . . extension fee and sent that off."

Laas, on the other hand, testified that he never understood that the application was going to be abandoned. Until he was advised by the investigator for the Disciplinary Administrator's office that the amendment had never been mailed, Laas believed that Sylvester had filed the amendment to bring the application into com-

pliance with the patent office's request. At the hearing, Sylvester characterized this discrepancy between his testimony and Laas' testimony as a misunderstanding.

On the day of his oral argument before this court, Sylvester filed a motion seeking permission to supplement the record. Along with the motion, Sylvester attached a copy of an order of suspension from the USPTO. Because of Sylvester's misconduct in representing Laas, the USPTO suspended Sylvester's license to practice patent law for 6 months and required Sylvester to pass the patent bar examination again before his license could be reinstated. The order from the USPTO included stipulated facts, one of which provided that Sylvester had filed the amendment to Laas' patent application in October 2000. Based on this stipulation in the USPTO order, Sylvester asserted for the first time before this court that he had actually mailed the amendment in accordance with the certification. Sylvester claimed that he had testified in error to his detriment before the hearing panel.

In an attempt to resolve Sylvester's factual claim, we verbally ordered the Disciplinary Administrator's office to investigate and file a response within 10 days. The Disciplinary Administrator's office filed a timely response, including a copy of the table of contents from the USPTO file which verified that Sylvester had filed the amendment in October 2000 as certified on the document. The parties have stipulated to the accuracy of this evidence, so we need not remand the matter to the hearing panel for a factual determination. However, we want to stress that the facts in this case are unusual. Typically, such evidence would require the matter to be remanded to the hearing panel for factfinding before we can finalize the disciplinary action. We do not encourage either the Disciplinary Administrator or respondents to present facts to this court that are not in the record. Likewise, we strongly discourage the filing of pleadings on the date of the oral argument or at any time that does not allow the opposing party to file a response as provided by Rule 5.01 (2005 Kan. Ct. R. Annot. 32).

## ANALYSIS

Sylvester contests several of the hearing panel's factual findings

and legal conclusions. We will address the factual findings first. Sylvester raises the following factual assertions:

1. The hearing panel should have found that Sylvester has significant experience in criminal law.

2. The hearing panel should have found that Sylvester submitted drawings to the patent office as requested.

3. The hearing panel should not have found that Sylvester intentionally misled his client.

4. The hearing panel should have found that the malpractice lawsuit against Sylvester was dismissed without prejudice and subject to being refiled.

5. The hearing panel should have found that there was no actual injury to Sylvester's client.

6. The hearing panel should not have found that Sylvester acted with a dishonest or selfish motive.

7. The court should consider additional information in support of mitigating factors.

We begin our analysis of Sylvester's assertions by recognizing the following standard of review set forth by this court in *In re Watson*, 280 Kan. 375, 382, 121 P.3d 982 (2005):

" 'This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.] When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. Therefore, we do not reweigh the evidence or pass on the credibility of witnesses.' [Citations omitted.]"

### Criminal Law Practice

Sylvester's brief to this court included additional information regarding his criminal law practice. Based on this information, Sylvester asks us to find that patent law is not his main area of practice and to conclude that the hearing panel's recommended discipline is inappropriate. None of the additional evidence in Sylvester's brief was presented to the hearing panel.

The information regarding Sylvester's criminal practice is irrelevant to the determination of whether Sylvester violated the Kansas Rules of Professional Conduct (KRPC) during his representation of a client in a patent matter. Sylvester's skills as a criminal attorney are not at issue in this case.

In addition to being irrelevant, the information about Sylvester's criminal practice does not support Sylvester's conclusion that his discipline should be mitigated because he primarily practices criminal law. KRPC 1.1 requires an attorney to be competent for any representation he or she accepts. The Comment to KRPC 1.1 provides that "[a] lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through association of a lawyer of established competence in the field in question." (2005 Kan. Ct. R. Annot. 356). Although there is a mitigating factor for inexperienced attorneys, the ABA Standards for Imposing Lawyer Sanctions do not include a mitigating factor for lawyers working outside their primary substantive areas of practice. ABA Standards for Imposing Lawyer Sanctions 9.32 (1991) (ABA Standards). The Kansas Rules of Professional Conduct require Sylvester to be competent at any substantive area of practice in which he accepts a case. Accordingly, we are not persuaded by Sylvester's claim that he was more skilled at criminal law.

*Submission of drawings*

Sylvester asserts that the hearing panel erred when it found that he had not submitted the drawings in response to the patent examiner's requests. Sylvester's concern is based on the following factual finding:

"In telephone calls placed in December, 1999, and January, 2000, the patent examiner requested that the Respondent submit new drawings. The Respondent failed to provide the new drawings.

"On March 9, 2000, the patent examiner notified the Respondent in writing that he had two months to submit new drawings or the patent application would be considered abandoned.

"On June 26, 2000, the patent examiner issued an office action and rejected Mr. Laas' claims."

Sylvester argues that he did submit the drawings contrary to the hearing panel's finding. His argument, however, misstates the hearing panel's finding. The hearing panel's finding regarding the submission of drawings is limited to the time period between December 1999 and March 2000, when Sylvester failed to respond to the patent examiner's *oral request* for drawings. The hearing panel did not make any findings regarding whether Sylvester submitted the drawings in response to the patent examiner's *written request* in March 2000. Sylvester's argument is based on an assumption about the hearing panel's finding that is not supported by the record. The hearing panel's limited finding regarding the submission of drawings is supported by the evidence. Thus, we find no merit in Sylvester's claim.

*Intentional Deception*

Sylvester asserts that the hearing panel erred when it found that he intentionally misled his client into believing that the patent application would be amended and that the amendment had been sent. Sylvester's argument focuses on what he characterized as a misunderstanding between himself and Laas as to whether an amendment would be filed. Sylvester contests the following finding:

"On October 26, 2000, one month after the deadline for a response, the Respondent sent Mr. Laas a copy of a request for an extension of time to reply to office action and response to office action. The Respondent certified that he mailed the documents to the Commissioner of Patents and Trademarks in Washington, D.C. Specifically, the documents sent by the Respondent to his client each states as follows: 'I hereby certify that I deposited this correspondence with the U.S. Postal Service as first class mail, in an envelope addressed to: Commissioner of Patent and Trademarks, Washington, D.C., 20231, with first class postage prepaid, this October 26, 2000. /s/ *Bradley Sylvester*[.]' The Respondent, however, did not send the documents to the Commissioner of Patents and Trademarks. The Respondent never responded to the office action."

Sylvester also takes issue with the hearing panel's footnote, which provides:

"In the Respondent's Answer to the suit filed by Mr. Laas, in the Respondent['s] written response to the initial disciplinary complaint, in the Respondent's Answer to the Formal Complaint in the instant action, and during his testimony at the

hearing on this matter, the Respondent stated that he and Mr. Laas discussed and agreed to allow the original patent application to be 'abandoned' and that he agreed to file a second patent application in behalf of Mr. Laas. Mr. Laas' position, however, is that the Respondent never suggested that the original patent application be abandoned. Mr. Laas testified that the Respondent agreed to amend the patent application, that he believed that the Respondent amended the patent application, and that he paid the Respondent to amend the patent application. After a careful consideration of all the evidence presented, particularly Disciplinary Administrator's Exhibit 2, p. 41, the hearing panel finds that the Respondent's statements and testimony in this regard lack merit."

We begin our consideration of Sylvester's argument by noting that the supplemental evidence received after the oral argument in this matter establishes that Sylvester filed the amendment in October 2000, contrary to his sworn testimony before the hearing panel. On the surface, it may appear that the new evidence eviscerates the hearing panel's finding, and no further consideration is necessary. However, Sylvester's testimony before the hearing panel concerns us for two reasons. First, Sylvester neglected to maintain adequate records of the documents filed in the case and failed to timely investigate whether the amendment had been filed. Second, Sylvester's testimony regarding his excuse for not filing the amendment appears to be fabricated to mitigate his incompetence. We agree with the hearing panel's conclusion that Sylvester's sworn testimony lacked merit, albeit for a different reason. Although Sylvester may not have deceived his client, his testimony at the hearing was deceptive. We believe Sylvester's deception was negligent based on his failure to adequately maintain records or timely investigate Laas' complaint.

*Malpractice Lawsuit*

Sylvester contests the hearing panel's finding regarding the malpractice lawsuit filed against him by Laas. Specifically, the hearing panel found that "[o]n March 1, 2004, Mr. Laas sued the Respondent for professional negligence and breach of fiduciary duty. While Mr. Laas' claims against the Respondent were not settled, Mr. Laas agreed to dismiss the suit without prejudice."

Sylvester argues that the hearing panel's finding ignores the threat that the lawsuit could be refiled because the statute of lim-

itations had not passed. Sylvester asserts that he was advised not to reimburse Laas until after the statute of limitations had run.

Sylvester mischaracterizes the hearing panel's finding. The hearing panel noted that the lawsuit was dismissed without prejudice. Although the hearing panel did not specifically note that the lawsuit could be refiled, it is implied in the finding that the lawsuit was dismissed *without prejudice*. Moreover, Laas acknowledged at the hearing that the lawsuit could be refiled. Sylvester's complaint regarding this finding is without merit.

*No Actual Injury*

In determining the appropriate discipline to recommend, the hearing panel considered whether Sylvester's misconduct caused any injury to Laas. The hearing panel concluded that "[i]t is difficult to determine the injury caused by the Respondent to Mr. Laas. Certainly, however, as a result of the Respondent's misconduct, the Respondent caused potential harm to Mr. Laas. The Respondent may have caused actual harm to Mr. Laas."

Laas·testified that if he filed another patent application, it would be subject to any patent applications filed after his first patent application was filed in January 1999. Laas further testified that he believed his invention was very similar to another patent that had been granted since 1999, causing him to be concerned that he would not receive a patent.

Sylvester highlights the lack of definitive evidence regarding any injury to Laas and asserts that the potentially conflicting patent that Laas is concerned about would not bar Laas' patent application. However, Sylvester offers no authority for this assertion and provides no citation to facts in the record to support the claim. Factual statements that are not keyed to the record are presumed to be without support. *In re Care & Treatment of Hay*, 263 Kan. 822, 835, 953 P.2d 666 (1998). Sylvester's unsubstantiated assertions do not negate the hearing panel's conclusion that Sylvester *may have caused* actual harm to Laas.

We cannot conclusively determine whether Sylvester caused actual harm·to Laas. However, we agree with the hearing panel's conclusion that Sylvester knowingly caused potential harm and may

have caused actual harm by failing to prosecute Laas' patent application in a timely manner, subjecting Laas' invention to other patent applications filed after January 1999.

*Selfish or Dishonest Motive*

Sylvester contests the hearing panel's conclusion that he acted with a selfish or dishonest motive when he failed to send the amendment to Laas' patent application in October 2000. Although the evidence from the hearing supports the hearing panel's conclusion, the evidence we received by stipulation of the parties following oral argument indicates that Sylvester was not dishonest about sending the amendment because he actually sent it. Nevertheless, we believe that Sylvester acted with a selfish or dishonest motive before the hearing panel when he fabricated an excuse for not filing the amendment to mitigate his own incompetence.

*Additional Mitigating Information*

At his hearing, Sylvester presented evidence regarding his son's medical problems in mitigation for his misconduct. The hearing panel noted Sylvester's son's medical problems as a mitigating factor in reaching its recommendation for sanctions. Nevertheless, in his brief, Sylvester offers additional information regarding his son's medical problems, arguing that the dates of his son's problems coincide with the dates of his negligence in prosecuting Laas' patent application. We view Sylvester's argument as an attempt to add evidence the record rather than a claim against the hearing panel's findings. We refuse to consider any new information that was not presented to the hearing panel or subject to a stipulation by the Disciplinary Administrator.

While we appreciate the difficulties regarding Sylvester's son's medical issues, we note that much of Sylvester's misconduct preceded the birth of his son. Likewise, we note Sylvester's proclaimed criminal case load of approximately 105 felony cases per year and approximately 8 other patent applications per year from 2001 to 2004. Sylvester further admits that during this time frame he handled multiple first-degree murder and other serious felony cases. This information diminishes Sylvester's claim that his misconduct

toward Laas was related to his son's medical problems. Rather, it would indicate that Sylvester ignored Laas' case to pursue other cases. Nevertheless, based on the evidence presented to the hearing panel, we agree with the hearing panel's conclusion that Sylvester's son's medical problems mitigate his misconduct in this case.

*Conclusions of Law*

In addition to disputing certain factual findings made by the hearing panel, Sylvester contests the hearing panel's conclusion that he violated KRPC 1.4(a), which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." 2005 Kan. Ct. R. Annot. 383. The hearing panel's conclusion that Sylvester violated KRPC 1.4(a) is based on its factual finding that Sylvester failed to inform Laas that his patent application had been abandoned, causing Laas to contact the patent office directly to learn the status of his application. This finding is amply sustained by the evidence and supports the hearing panel's conclusion that Sylvester violated KRPC 1.4(a).

Sylvester further contests the hearing panel's conclusion that he violated KRPC 8.4(c), which provides that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Based on the evidence that became available after the oral argument in this matter, the Disciplinary Administrator seeks to dismiss the hearing panel's conclusion that Sylvester violated KRPC 8.4(c) because the conclusion was based on the hearing panel's finding that Sylvester had failed to send the amendment to Laas' application in October 2000. Although we agree that the hearing panel's finding regarding Sylvester's dishonesty or misrepresentation has been refuted by additional evidence, we do not believe that the hearing panel's conclusion should be dismissed. Sylvester testified under oath to his own detriment that he did not mail the amendment to Laas' patent application. To excuse his failure to send the amendment, Sylvester fabricated an excuse. We believe Sylvester's fabricated excuse amounts to misrepresentation or dishonesty, stemming

from his failure to maintain adequate records or fully investigate the facts related to Laas' patent application.

*Sanctions*

We turn now to determining the appropriate sanction for Sylvester's violations. We are not bound by the recommendations made by the Disciplinary Administrator or the panel. Rule 212(f) (2005 Ct. R. Annot. 297); *In re Rumsey*, 276 Kan. 65, 78, 71 P.3d 1150 (2003). When imposing a sanction, we consider the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating and mitigating factors. 276 Kan. at 78; ABA Standard 3.0.

We agree with the hearing panel's conclusions that Sylvester violated KRPC 1.1, KRPC 1.2(a), KRPC 1.3, KRPC 1.4(a), and KRPC 8.4(c). We also agree with the hearing panel's assessment regarding the aggravating and mitigating factors for determining the appropriate sanction. The hearing panel determined that Sylvester's misconduct was aggravated because he acted with a selfish or dishonest motive, violated multiple rules, and had practiced for more than 10 years. We adopt the hearing panel's conclusions regarding the aggravating factors. We further adopt the hearing panel's conclusion that Sylvester's misconduct was mitigated by the absence of any prior disciplinary action, his personal or emotional problems, and his remorse.

The ABA Standards provide that published censure is generally appropriate when a lawyer acts negligently and causes actual or potential injury to a client. See ABA Standards 4.43, 4.53, and 6.13. The majority of the court believes that Sylvester acted negligently and potentially caused Laas to lose his patent. Accordingly, a majority of the court believes the appropriate sanction is published censure. However, a minority of the court believes Sylvester acted knowingly and would have imposed a more severe discipline. The court's imposition of published censure considers the aggravating and mitigating factors as well as the action by the USPTO in suspending Sylvester's license to practice and requiring him to retake the patent bar exam before his license can be reinstated. We be-

lieve this action by the USPTO further protects the public from Sylvester's misconduct.

In addition to a published censure, we agree with the hearing panel's recommendation that Sylvester reimburse Laas for his attorney fees in the amount of $5,800. Sylvester is hereby ordered to file documentation with this court to establish that he has made such payment in full by December 31, 2006.

IT IS THEREFORE ORDERED that Bradley P. Sylvester be and he is hereby disciplined by censure in accordance with Supreme Court Rule 203(a)(3) (2005 Kan. Ct. R. Annot. 247) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that Sylvester file documentation to show proof of payment to Mark Laas in the sum of $5,800 by December 31, 2006.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.